238 F.3d 567 (4th Cir. 2001)
 GENE A. YOUNG, SR., INDIVIDUALLY, AND AS EXECUTOR OF THE ESTATE OF GENE A. YOUNG, JR.; PHYLLIS YOUNG, PLAINTIFFS-APPELLANTS,
V.
CITY OF MOUNT RANIER; JODY SHEGAN, SERGEANT, MOUNT RANIER POLICE DEPARTMENT; PRINCE GEORGE'S COUNTY SHERIFF'S OFFICE; RAYMOND BUNNER, DEPUTY SHERIFF, PRINCE GEORGE'S COUNTY SHERIFF'S DEPARTMENT; CITY OF COTTAGE CITY; ROBERT SZABO, DEFENDANTS-APPELLEES,
AND
PRINCE GEORGE'S COUNTY; COTTAGE CITY POLICE DEPARTMENT; PRINCE GEORGE'S HOSPITAL CENTER, DEFENDANTS.
 No. 99-1269.
 U.S. Court of Appeals, Fourth Circuit.
 Argued: September 27, 2000.
January 31, 2001.
 
 1
 Appeal from the United States District Court for the District of Maryland, at Greenbelt.
 
 
 2
 Peter J. Messitte, District Judge. (CA-98-1792-PJM)[Copyrighted Material Omitted]
 
 
 3
 Argued: Thomas James Gagliardo, Gagliardo & Zipin, Silver Spring, Maryland, for Appellants. Frank William Mann, III, Special Assistant Attorney General, Baltimore, Maryland; Daniel Karp, Allen, Johnson, Alexander & Karp, Baltimore, Maryland; Samuel Maddox Riley, West & Moore, L.L.C., Baltimore, Maryland, for Appellees. On Brief: J. Joseph Curran, Jr., Attorney General of Maryland, Baltimore, Maryland, for Appellees.
 
 
 4
 Before Motz and Traxler, Circuit Judges, and Frederick P. Stamp, Jr., Chief United States District Judge for the Northern District of West Virginia, sitting by designation.
 
 
 5
 Affirmed in part and dismissed in part by published opinion. Judge Traxler wrote the opinion, in which Judge Motz and Chief Judge Stamp joined.
 
 OPINION
 Traxler, Circuit Judge
 
 6
 Appellants Gene A. Young, Sr., individually and as executor of the estate of Gene A. Young, Jr., and Phyllis Young (together, the "Parents") appeal from the dismissal of their state and federal claims against various law enforcement officers and their employers. We affirm in part and dismiss in part.
 
 I. BACKGROUND
 
 7
 According to the allegations of the original complaint filed by the Parents, Mount Rainier police officer Jody Shegan and Prince George's County Deputy Raymond Bunner responded to a call about a disturbance in Mount Rainier, Maryland. When they arrived, the officers found Gene Young lying in the road yelling "get it off me." J.A. 14. The officers decided to detain Young for an emergency psychiatric evaluation. Young resisted when the officers tried to take him into custody, and the officers used pepper spray to subdue him. They handcuffed Young, shackled his legs, and placed him face down in the back seat of the car belonging to Cottage City police officer Robert Szabo, who had arrived on the scene. The officers transported Young to Prince George's County Hospital emergency room. At some point thereafter, a nurse observed that Young was lying face down on the floor in the emergency room. Young had no pulse when the nurse turned him over, and efforts to resuscitate him failed. An autopsy revealed the presence of PCP in Young's system and indicated that Young died from sudden cardiac arrhythmia.
 
 
 8
 The Parents sued the individual law enforcement officers and their employers. Although the theory of liability is not apparent from the allegations of the original complaint, the Parents contend that Young died from "positional asphyxiation" caused by a combination of the use of pepper spray, which swells the airways, and his placement in the police cruiser and the emergency room in a face-down position, which compresses the airways and can further restrict the ability to breathe.[1]
 
 
 9
 The original complaint asserted state law negligence, wrongful death, and survival claims, as well as constitutional claims under 42 U.S.C.A. § 1983 (West Supp. 2000). The claims were asserted against Mount Rainier and Officer Jody Shegan; Prince George's County, Prince George's County Sheriff's Department, and Deputy Raymond Bunner; Cottage City and Officer Robert Szabo; and Prince George's Hospital Center.
 
 
 10
 In the state law causes of action, the Parents alleged that the defendants failed to protect Young from harm while he was in their custody and care. As to the section 1983 claims, the Parents alleged that officers committed "outrageous and malicious physical abuse" against Young and that the governmental employers "knew or should have known of the dangers of physical restraint and the use of pepper spray upon drug users, especially those using phencyclidine (PCP)" and should have developed adequate safety measures to be used which would maximize the safety of individuals like Plaintiffs' son.
 
 
 11
 After the action was removed to federal court, motions to dismiss were filed by the City of Mount Rainier, the Office of the Sheriff of Prince George's County, and Deputy Bunner. A few days before the hearing was scheduled on those motions, the Parents filed a motion seeking permission for "alternate service" on Officer Shegan. On the day of the hearing, the Parents sought leave to file an amended complaint, and Cottage City and Officer Szabo filed motions to dismiss the complaint.
 
 
 12
 At the hearing, the district court refused to consider the Parents' motion to amend[2] and also refused to consider the motions to dismiss filed by Cottage City and Officer Szabo. As to the motion to amend, the court stated, "[w]e will see whether there's any cause of action that survives after [the disposition of the other motions to dismiss], there may or may not be leave to amend." J.A. 35. As to Cottage City's motions to dismiss, the court stated, "[i]f in fact this case survives and there is an amended complaint, you can file a motion to dismiss then." J.A. 34.
 
 
 13
 The district court then dismissed the section 1983 claim asserted against Mount Rainier with leave to amend the complaint to "be more specific as to the alleged policy, custom, or usage." J.A. 94. As to Deputy Bunner, the district court dismissed the section 1983 claim on the grounds that the facts alleged in the complaint failed to state a constitutional violation and, alternatively, that Deputy Bunner was entitled to qualified immunity. The district court also dismissed the state law claims, concluding that Maryland law granted Bunner immunity from the claims.
 
 
 14
 The district court dismissed the claims against the Office of the Sheriff of Prince George's County, noting that the"office of the sheriff" was not an entity capable of being sued. The court did, however, grant the Parents leave to amend their complaint to properly name the sheriff.
 
 
 15
 As to Officer Shegan, whom the Parents had been unable to serve, the district court granted the Parents leave to serve him by alternate means. The court suggested that any claims against Shegan would ultimately be dismissed under the same analysis used for the claims against Deputy Bunner, but the court indicated that it would be improper to dismiss the claims against Shegan without giving the Parents an opportunity to serve him and make their claims against him. The district court did not consider the viability of the claims against the other named defendants.
 
 
 16
 Sometime after this hearing, the Parents filed a second amended complaint (the "amended complaint"). The amended complaint asserted only section 1983 failure-to-train claims against Mount Rainier, Cottage City, and the Sheriff of Prince George's County (together, the "governmental employers"), omitting all claims against the individual law enforcement officers and all state law claims against any defendant. The governmental employers thereafter moved to dismiss the claims asserted in the amended complaint. The district court dismissed the amended complaint, concluding that there could be no liability on the part of the governmental employers in light of the previous dismissal of the claims against the individual defendants.
 
 
 17
 The Parents then filed this appeal. They challenge the district court's dismissal of the state and federal claims against the individual defendants asserted in the original complaint as well as the dismissal of the federal claims asserted against the governmental employers in the amended complaint.
 
 II. EFFECT OF AMENDED COMPLAINT
 
 18
 As a threshold matter, we must determine whether the Parents' challenges to the dismissal of the claims asserted against the individual law enforcement officers in the original complaint are properly before us.
 
 
 19
 As a general rule, "an amended pleading ordinarily supersedes the original and renders it of no legal effect." Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.), 226 F.3d 160, 162 (2d Cir. 2000); see also 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1476 (2d ed. 1990) ("A pleading that has been amended... supersedes the pleading it modifies.... Once an amended pleading is interposed, the original pleading no longer performs any function in the case...."). According to the Appellees, because the Parents failed to include any claims against the individual officers in the amended complaint, which superseded the original complaint, the Parents have waived their right to challenge the dismissal of the claims against the individual defendants.[3] We disagree.
 
 
 20
 Most circuits refuse to require a plaintiff to replead dismissed claims in order to preserve the right to appeal the dismissal. See Davis v. TXO Prod. Corp., 929 F.2d 1515, 1518 (10th Cir. 1991) ("We believe that a rule requiring plaintiffs who file amended complaints to replead claims previously dismissed on their merits in order to preserve those claims merely sets a trap for unsuspecting plaintiffs with no concomitant benefit to the opposing party.... The district court's dismissal of the claim made clear that any attempt by appellant to reallege that claim would be futile." (footnotes and internal citations omitted)); accord In re Crysen/Montenay, 226 F.3d at 162; Dunn v. Air Line Pilots Ass'n, 193 F.3d 1185, 1191 n.5 (11th Cir. 1999), cert. denied, 120 S. Ct. 2197 (2000); see also Wright & Miller, § 1476 ("A rule that a party waives all objections to the court's dismissal if he elects to amend is too mechanical.... Without more, the action of the amending party should not result in completely denying the right to appeal the court's ruling."). While the Ninth Circuit in the past adhered to the rule urged by the Appellees, see, e.g., London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981), it now applies the rule only in cases where the claims were dismissed with leave to amend. See Parrino v. FHP, Inc., 146 F.3d 699, 704 (9th Cir. 1998) (noting that repleading rule does not apply to claims dismissed by summary judgment and refusing to apply it to claims dismissed without leave to amend: "If the plaintiff were required to reallege claims dismissed on summary judgment to avoid waiving them, plaintiff's counsel would be forced to bear the risk of sanctions to preserve his client's right to appeal. Because this concern applies with equal force to claims dismissed without leave to amend, we decline to apply the [repleading] rule." (citations omitted)).
 
 
 21
 We likewise conclude that it is needlessly formalistic to require a plaintiff to replead claims already dismissed without leave to amend in order to preserve the right to appeal the dismissal. By dismissing the claims in such a manner, the district court has quite clearly given its view of the viability of the claims, a view not made any clearer or more final by requiring the plaintiff to re-allege the already rejected claims. Accordingly, we conclude that, if a claim is dismissed without leave to amend, the plaintiff does not forfeit the right to challenge the dismissal on appeal simply by filing an amended complaint that does not re-allege the dismissed claim.[4]
 
 
 22
 The district court dismissed the claims against Deputy Raymond Bunner on the merits, without leave to amend. The Parents, therefore, may challenge on appeal the dismissal of their claims against Bunner notwithstanding their failure to re-allege the claims against him in the amended complaint.
 
 
 23
 The district court, however, did not consider the claims against Officer Szabo and Officer Shegan, and those claims therefore remained viable after the court issued its first dismissal order. The question, then, is whether the Parents may proceed with their claims against these two officers notwithstanding their failure to allege any claims against the officers in their amended complaint. We conclude they cannot.
 
 
 24
 The general rule, as stated above, is that an amended pleading supersedes the original pleading, rendering the original pleading of no effect. Thus, if an amended complaint omits claims raised in the original complaint, the plaintiff has waived those omitted claims. The rule that we have adopted today is simply an exception to the general rule of waiver--that is, if the claims not included in the amended complaint have previously been dismissed by the court without leave to amend, then the waiver rule does not apply and the plaintiff may challenge the dismissal on appeal without repleading the dismissed claims. In this case, because the district court did not dismiss the claims against Officers Shegan and Szabo, those claims fall squarely within the general rule and thus must be deemed waived or abandoned by the Parents.
 
 
 25
 We do not believe it to be inconsistent to allow the Parents to proceed against Deputy Bunner but not Officers Shegan and Szabo. We do not require the Parents to re-allege their claims against Deputy Bunner because the district court had already dismissed the claims outright once and there is no reason to make the court dismiss them a second time. But the same simply cannot be said of the claims against Officers Shegan and Szabo. The district court, had it in fact considered the viability of the claims against Officers Shegan and Szabo, would likely have dismissed the claims under the same analysis used to dismiss the claims against Deputy Bunner. That we think we know what a district court probably would have done in a given situation, however, is no substitute for the district court actually doing it. The appeals process exists to correct errors by the judge or jury; it cannot be used to correct strategic decisions made by a party's attorney. While the court almost certainly would have dismissed the claims against Officer Shegan and Officer Szabo, the fact remains that the court did not dismiss the claims. Instead, the Parents chose not to include any claims against these officers in their amended complaint, thus obviating the need for Officer Shegan to file a motion to dismiss, and mooting Officer Szabo's still-pending motion to dismiss.
 
 
 26
 Thus, while there conceivably might be an error by the district court with regard to the claims against Deputy Bunner to which the Parents can point on appeal, there simply is no error by the district court as to the claims against Officers Shegan and Szabo to which the Parents can point. Because no action was taken by the district court in connection with the claims against Officers Shegan and Szabo, we cannot excuse the Parents' failure to re-allege their claims against these officers in the amended complaint. The Parents, therefore, may challenge on appeal the dismissal of their claims against Deputy Bunner. We will not, however, consider any claims asserted against Officers Shegan and Szabo and we dismiss the appeal as to any claims against them.
 
 III. CLAIMS AGAINST DEPUTY BUNNER
 A. Constitutional Claims
 
 27
 When presented with a section 1983 claim to which qualified immunity has been asserted as a defense, a court must first determine whether the plaintiff has alleged the deprivation of a constitutional right. Only if a constitutional claim has been alleged should we proceed to the determination of whether qualified immunity shields the defendant from liability. See Wilson v. Layne, 526 U.S. 603, 609 (1999); Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000).
 
 1. Standard for Measuring Conduct
 
 28
 Determining whether the original complaint sufficiently alleges a constitutional violation requires us to resolve a threshold question about the standard by which Deputy Bunner's conduct should be measured. The district court concluded that the conduct must be measured under a "shocks the conscience" standard, while the Parents contend that "deliberate indifference" is the proper standard. The answer to this question depends on the nature of the claims asserted by the Parents.
 
 
 29
 Although the original complaint refers to "malicious abuse" by the law enforcement officers, the Parents' claims are not grounded in the Fourth Amendment--in their brief and during oral argument they specifically disavowed any contention that the law enforcement officers improperly took Young into custody or that they used excessive force when taking him into custody. Instead, the Parents proceed solely under the Fourteenth Amendment, contending that the defendants violated Young's constitutional rights by failing to protect him from a known risk of harm (the risk of asphyxiation when restrained in a prone position, particularly after being sprayed with pepper spray), or, stated somewhat differently, that the defendants violated Young's constitutional rights by their indifference to his serious medical needs brought about by the pepper spray, restraints, and face-down positioning.
 
 
 30
 Broadly speaking, the substantive due process provision of the Fourteenth Amendment protects against egregious, arbitrary governmental conduct. See County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998). Only governmental conduct that "shocks the conscience" is actionable as a violation of the Fourteenth Amendment. Id. at 846. As the Supreme Court recognized in Lewis, however, determining whether conduct is sufficiently egregious to amount to a Fourteenth Amendment violation is far from an exact science. See id. at 847 ("While the measure of what is conscience-shocking is no calibrated yard stick, it does... point the way." (internal quotations marks and alterations omitted)). Depending on the circumstances, different degrees of fault may rise to the level of conscience-shocking. See Miller v. City of Philadelphia, 174 F.3d 368, 375 (3d Cir. 1999) ("The exact degree of wrongfulness necessary to reach the `conscience-shocking' level depends upon the circumstances of a particular case.").
 
 
 31
 It is clear that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process," and that conduct "intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Lewis, 523 U.S. at 849. Nonetheless, under certain circumstances, conduct "falling within the middle range" of culpability--that is, conduct that is more than negligent but less than intentional--can give rise to liability under the Fourteenth Amendment. Id.
 
 
 32
 As noted above, the Parents contend that the defendants failed to protect Young from a known and substantial risk of harm while he was in their custody and that the defendants were deliberately indifferent to his medical needs. These claims fall within the limited circumstances where conduct in the "middle range" of culpability-specifically, conduct that amounts to "deliberate indifference"--is viewed as sufficiently shocking to the conscience that it can support a Fourteenth Amendment claim. See, e.g., Nicini v. Morra, 212 F.3d 798, 810 (3rd Cir. 2000) (en banc) (noting that"[i]n some circumstances, conduct that is deliberately indifferent will shock the conscience"); Schaefer v. Goch, 153 F.3d 793, 797 (7th Cir. 1998) (explaining that deliberate indifference "is merely the manifestation in certain situations of a more general inquiry, which is whether the government conduct at issue shocks the conscience" (internal quotation marks omitted)).
 
 
 33
 In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court held that prison officials violate the Eighth Amendment when they are deliberately indifferent to the serious medical needs of their prisoners. See id. at 104-05. Pretrial detainees[5] are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth Amendment. See City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 243-44 (1983); Hill v. Nicodemus, 979 F.2d 987, 991-92 (4th Cir. 1992). Thus, deliberate indifference to the serious medical needs of a pretrial detainee violates the due process clause. See Lewis, 523 U.S. at 850 (concluding that, because it is sufficient for liability under the 8th Amendment, "deliberately indifferent conduct must also be enough to satisfy the fault requirement for due process claims based on the medical needs of someone jailed while awaiting trial"); Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) (applying deliberate indifference standard to pretrial detainee's claim that he was denied needed medical treatment), cert. denied, 120 S. Ct. 1673 (2000); Belcher v. Oliver, 898 F.2d 32, 34 (4th Cir. 1990) ("The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee.").
 
 
 34
 While the Parents sometimes couch their claims in terms of the failure to protect Young from a substantial risk of harm, such a claim is no different in any meaningful respect from the indifferent-tomedical-needs claim and is governed by the same standard of deliberate indifference. See Wilson v. Sieter, 501 U.S. 294, 303 (1991) (finding "no significant distinction between claims alleging inadequate medical care and those alleging inadequate `conditions of confinement'" and concluding that an inmate's failure-to-protect claim must be measured under the deliberate indifference standard); Hare v. City of Corinth, 74 F.3d 633, 644 (5th Cir. 1996) (en banc) (noting "the absence of a constitutionally significant distinction between failureto-protect claims and medical care claims"). We therefore conclude that the Parents' claims must be measured under a standard of deliberate indifference.
 
 2. Sufficiency of the Allegations
 
 35
 The next question we must resolve is whether the original complaint sufficiently alleges that Deputy Bunner was deliberately indifferent to Young's medical needs or to a substantial risk of harm faced by Young. "Deliberate indifference is a very high standard--a showing of mere negligence will not meet it." Grayson, 195 F.3d at 695. Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care. See White ex rel. White v. Chambliss, 112 F.3d 731, 737 (4th Cir. 1997) ("A claim of deliberate indifference... implies at a minimum that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice."); see also Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("[A] prison official cannot be found liable... for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). In this case, the allegations of the original complaint fall far short of alleging deliberate indifference on the part of Deputy Bunner.
 
 
 36
 The relevant allegations of the original complaint are that the officers used pepper spray and hand and leg restraints when taking Young into custody and then placed him face down in the police car and in the emergency room. The Parents appear to believe that, considering the known effects of pepper spray on a PCP user, the use of pepper spray on a person under the influence of PCP can support liability under the Fourteenth Amendment. Assuming the correctness of the Parents' premise--that pepper spray is dangerous for a PCP user --we nonetheless reject it as a basis for the finding of a constitutional violation in this case.
 
 
 37
 The original complaint alleges only that Young was behaving strangely and that the autopsy revealed that Young had PCP in his system when he died; there is no allegation that the officers knew or even suspected Young was under the influence of PCP. Thus, to the extent the Parents' claims are premised upon the use of pepper spray on a person under the influence of PCP, the original complaint does not allege the existence of a serious risk of harm that was faced by Young, much less a risk known to and disregarded by the law enforcement officers. And given Young's erratic behavior and his acknowledged struggle with the law enforcement officers, the mere use of pepper spray in this case cannot be considered a Fourteenth Amendment violation.
 
 
 38
 The original complaint is also insufficient to allege a constitutional violation premised on the Parents' theory that Young died from positional asphyxiation caused by the combination of pepper spray, restraints, and face-down positioning. As noted above, the original complaint does not allege that Deputy Bunner suspected Young was under the influence of PCP when Young was taken into custody. Moreover, the complaint does not allege that Young lost consciousness, was ever in distress while being transported to the hospital, or, perhaps even more fundamentally, that Young died from asphyxiation. Instead, the complaint alleges the cause of death posited in the autopsy report: sudden cardiac arrhythmia possibly caused by "a combination of the stimulant drug intoxication... and the physical restraint for his violent behavior." J.A. A15. We fail to see how an allegation of death caused by cardiac arrhythmia can support the nowespoused theory that Young died from asphyxiation. See Bender v. Suburban Hosp., Inc., 159 F.3d 186, 192 (4th Cir. 1998) ("[W]hile notice pleading does not demand that a complaint expound the facts, a plaintiff who does so is bound by such exposition.").
 
 
 39
 Nonetheless, whether Young died from a "sudden interruption in heart activity" as alleged in the complaint, J.A. 15, or from positional asphyxiation as the Parents now contend, there simply are no allegations in the complaint from which we can conclude that the officers were deliberately indifferent to Young's safety or his serious medical needs. Reading the original complaint in the light most favorable to the Parents and giving the Parents the benefit of all reasonable inferences, as we are required to do at this stage of the proceedings, see, e.g., Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999), the complaint simply establishes that Young struggled with law enforcement officers, was sprayed with pepper spray, restrained, transported to a hospital in a prone position, and died sometime thereafter. While the complaint alleges that the officers knew or should have known about the potential problems with the use of pepper spray and restraints on PCP users, these allegations, particularly absent any suggestion that Young exhibited any distress during the time he was in the custody of the officers, at most support an inference that the defendants were negligent in some unidentified way. Negligence, however, is insufficient to support a claim of a Fourteenth Amendment violation.[6] See Lewis, 523 U.S. at 849; Grayson, 195 F.3d at 695.
 
 
 40
 To be sure, the original complaint throws in words and phrases such as "deliberate indifference," "malicious," "outrageous," and "wanton" when describing the conduct of the officers. The presence, however, of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support a finding of deliberate indifference. See Payne v. Churchich, 161 F.3d 1030, 1041 (7th Cir. 1998) (dismissing Fourteenth Amendment claim even though "the complaint contains the single cursory allegation" of deliberate indifference where "the conduct alleged to support that claim constitutes negligence and nothing more"); Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996) (noting that "bald assertions and conclusions of law" do not prevent dismissal of a complaint under Rule 12(b)(6)); Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995) (explaining that although pleadings must be liberally construed, "[a]t the very least... the complaint must contain facts which state a claim as a matter of law and must not be conclusory."). The original complaint does not allege the existence of a substantial risk of serious harm to Young known to and disregarded by Deputy Bunner or the existence of any serious medical needs known to and disregarded by Bunner.[7] The original complaint, therefore, fails to allege the deliberate indifference required to sustain the Parents' Fourteenth Amendment claims and the constitutional claims asserted against Deputy Bunner were properly dismissed. Because we conclude that the complaint does not allege a constitutional violation, we have no need to consider the question of qualified immunity.
 
 B. State Law Claims
 
 41
 When dismissing the claims asserted against Deputy Bunner, the district court first determined that the allegations of the original complaint were probably sufficient to prevent the application of the state personnel immunity established by section 5-522 of Maryland's Courts and Judicial Proceedings Article. See Md. Code Ann., Cts. & Jud. Proc. § 5-522(b) (Michie Supp. 2000). Nonetheless, the district court found that Bunner was entitled to immunity established by section 5-624 of the Courts and Judicial Proceedings Article. See Md. Code Ann., Cts. & Jud. Proc. § 5-624(c) (Michie 1998). Section 5-624 provides that "[a]ny peace officer who, in good faith and with reasonable grounds, acts as a custodian of an emergency evaluee is not civilly or criminally liable for acting as a custodian." Id. The district court concluded that Bunner acted in good faith and with reasonable grounds when taking Young into custody, and that Bunner was therefore entitled to immunity under section 5-624. Accordingly, the district court dismissed the state law claims asserted against Bunner.
 
 
 42
 By its terms, section 5-624 grants a peace officer immunity for acting as a custodian of an emergency evaluee. While this statute appears, at a minimum, to protect an officer from claims such as false imprisonment based on the act of taking the evaluee into custody, it does not appear to offer an officer blanket immunity for anything and everything that might occur after the evaluee is taken into custody. Here, the Parents do not challenge the decision to take Young into custody, but contend that the officers failed to protect him from a known risk of harm once he was in their custody, and we question whether such a claim would fall within the scope of immunity granted by section 5-624. We need not, however, resolve this question, because we conclude that Deputy Bunner is entitled to state personnel immunity under section 5-522 of the Code. See Brewster of Lynchburg, Inc. v. Dial Corp., 33 F.3d 355, 361 n.3 (4th Cir. 1994) ("[E]ven though we disagree with the reasoning of the district court, we may affirm the result on different grounds if fully supported by the record.").
 
 
 43
 Section 5-522 provides that state personnel[8] are immune from suit and from liability for tortious conduct committed within the scope of their public duties and without malice or gross negligence if the State has waived sovereign immunity. See Md. Cts. & Jud. Proc. § 5-522(b). Because the state of Maryland has waived sovereign immunity for the tort claims involved here, see Md. Code Ann., State Gov't § 12-104(a) (Michie 1999); Md. Code Ann., Cts. & Jud. Proc. § 5-522(a), the question is whether the original complaint sufficiently alleges facts that support an inference of the existence of malice or gross negligence.
 
 
 44
 Under Maryland law, the malice necessary to defeat immunity under section 5-522 is what is often referred to as"actual malice"-that is, conduct "motivated by ill will, by an improper motive, or by an affirmative intent to injure." Shoemaker v. Smith, 725 A.2d 549, 560 (Md. 1999). A similarly high threshold must be crossed to establish gross negligence--the defendant must have"acted with wanton or reckless disregard for the safety of others." Boyer v. State, 594 A.2d 121, 132 (Md. 1991); cf. State v. Albrecht, 649 A.2d 336, 348 (Md. 1994) (defining gross negligence as conduct"so heedless and incautious as necessarily to be deemed unlawful and wanton, manifesting such a gross departure from what would be the conduct of an ordinarily careful and prudent person under the same circumstances so as to furnish evidence of an indifference to consequences." (citation and internal quotation marks omitted)). For largely the same reasons that the allegations of the original complaint are insufficient to give rise to an inference of deliberate indifference, they are likewise insufficient to give rise to an inference of gross negligence or malice.
 
 
 45
 Given that the complaint itself alleges that Young struggled with the officers, the mere use of pepper spray and restraints does not give rise to an inference of malice or gross negligence. Moreover, as previously discussed, there is no allegation that the officers suspected that Young was under the influence of PCP. Therefore, even if the Parents are correct that it can be dangerous to use pepper spray on PCP users, no inference of malice or gross negligence can be drawn from the allegations regarding the use in this case of pepper spray and restraints after an acknowledged struggle. And because the original complaint does not allege any facts consistent with the Parents' positional asphyxiation theory and does not allege that Young was ever in distress or lost consciousness while in the officers' custody, the fact that Young was placed face down in the police car and in the hospital is insufficient to establish the requisite degree of fault.
 
 
 46
 At best, the original complaint alleges negligence on the part of the defendants. But just as negligence is insufficient to sustain a Fourteenth Amendment claim, it is likewise insufficient to establish the malice or gross negligence necessary to overcome Maryland's state employee immunity. See Wells v. Maryland, 642 A.2d 879, 885 (Md. Ct. Spec. App. 1994) (holding that allegations in complaint, which suggested "individual negligence and bureaucratic mismanagement and incompetence" and "lack of clear procedures and protocols" did not allege gross negligence because the allegations did not indicate "malice, evil intention, or wanton, wilful, or reckless disregard for human life or the rights of others"). Deputy Bunner is therefore protected by section 5-522 from the state law claims asserted against him, and the dismissal of the claims was proper.
 
 
 47
 IV. CLAIMS AGAINST THE GOVERNMENTAL EMPLOYERS
 
 
 48
 As previously discussed, the Parents' amended complaint included only section 1983 failure-to-train claims against the governmental employers. The district court dismissed these claims, concluding that the absence of any viable constitutional claim against the individual defendants prevented the claims from being asserted against the governmental employers. The Parents argue that the district court erred, and that section 1983 failure-to-train claims, at least in some cases, should be allowed to proceed against employers even in the absence of any viable claims against an individual defendant. We disagree.
 
 
 49
 The law is quite clear in this circuit that a section 1983 failure-totrain claim cannot be maintained against a governmental employer in a case where there is no underlying constitutional violation by the employee. See Grayson, 195 F.3d at 697 ("As there are no underlying constitutional violations by any individual, there can be no municipal liability."); Temkin v. Frederick County Comm'rs, 945 F.2d 716, 724 (4th Cir. 1991) ("A claim of inadequate training under section 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation on the part of the person being supervised.").[9]
 
 
 50
 We have already concluded that the conduct of Deputy Bunner complained of by the Parents does not amount to a constitutional violation by Bunner, and the Parents allege no different conduct on the part of Officers Shegan and Szabo. Because the Parents have failed to allege a constitutional violation on the part of any law enforcement officer, the district court properly dismissed the failure-to-train claims asserted against the governmental employers.
 
 V. CONCLUSION
 
 51
 For the foregoing reasons, we affirm the district court's dismissal of the state law and constitutional claims asserted against Deputy Bunner and the constitutional claims against the governmental employers. We dismiss the appeal as to any claims the Parents attempt to assert against Officers Shegan and Szabo.
 
 AFFIRMED IN PART; DISMISSED IN PART
 
 
 NOTES:
 
 
 [1]
 At the hearing on the motion to dismiss, the district court and the defendants accepted the Parents' characterization of their claims without raising any real question as to whether the positional asphyxiation theory was encompassed by the allegations of the original complaint.
 
 
 [2]
 The Parents do not challenge on appeal the district court's refusal to consider the first amended complaint.
 
 
 [3]
 As noted above, the Parents asserted state and federal claims against the governmental employers in the original complaint, but asserted only federal constitutional claims against them in the amended complaint. The Parents do not challenge on appeal the dismissal of any state law claims against the governmental employers.
 
 
 [4]
 We do not consider whether claims dismissed with leave to amend must be re-alleged in an amended complaint in order to preserve the right to appeal the dismissal, as that issue is not before us.
 
 
 [5]
 Young perhaps was not a typical pretrial detainee given that there is no indication that he was under arrest or would later have been arrested. Nonetheless, Young was involuntarily taken into custody by the defendants and they owed him the same duties owed to a more typical pretrial detainee. See Buffington v. Baltimore County, Md., 913 F.2d 113, 119 (4th Cir. 1990).
 
 
 [6]
 The amended complaint includes some factual allegations not contained in the original complaint. For example, the original complaint alleges only that pepper spray was used, while the amended complaint alleges that so much pepper spray was used that it pooled in the street. The Parents suggest that we should combine the allegations in the original complaint with those in the amended complaint when considering whether the claims were properly dismissed. We disagree. The sufficiency of the claims against Deputy Bunner must be determined by looking only to the allegations in the original complaint, the only pleading containing claims against Bunner, and the only pleading considered by the district court when it dismissed the claims.
 
 
 [7]
 We reject the Parents' suggestion at oral argument that an inference of deliberate indifference can be drawn from the officers' "abandonment" of Young at the hospital. The original complaint does not allege that Young was abandoned at the hospital. Indeed, the facts that are alleged in the original complaint are completely inconsistent with this most recent theory of liability. The complaint alleges that the defendants and hospital security guards took Young into the emergency room; there is no allegation that the law enforcement officers left the hospital or that hospital personnel failed to properly attend to Young. Thus, the only inference that can be drawn from the complaint is that the law enforcement officers turned over the care of Young to hospital personnel. We fail to see how such conduct could be considered abandonment, much less deliberate indifference to Young's serious medical needs.
 
 
 [8]
 Deputy sheriffs are considered"state personnel" under Md. Code Ann., State Gov't § 12-101(a)(6) (Michie Supp. 2000).
 
 
 [9]
 The Parents urge us to ignore our own cases and instead accept the analysis of the Third Circuit Court of Appeals. See Fagan v. City of Vineland, 22 F.3d 1283, 1293-94 (3d Cir. 1994) ("We hold that a municipality can be liable under section 1983 and the Fourteenth Amendment for a failure to train its police officers with respect to high-speed automobile chases, even if no individual officer participating in the chase violated the Constitution."). We are, of course, bound by the precedent in our own circuit. See, e.g., Etheridge v. Norfolk & Western Ry. Co., 9 F.3d 1087, 1090 (4th Cir. 1993) ("A decision of a panel of this court becomes the law of the circuit and is binding on other panels unless it is overruled by a subsequent en banc opinion of this court or a superseding contrary decision of the Supreme Court." (internal quotation marks omitted)).