**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-1423**

UNITED STATES OF AMERICA ex rel. BARRINGTON T. GODFREY,

             Plaintiff - Appellant,

       v.

KBR, INCORPORATED; KELLOGG BROWN & ROOT SERVICES, INCORPORATED,

             Defendants – Appellees,

       and

JAMAL NASERY; ABC INTERNATIONAL GROUP; GULF CATERING COMPANY; TAMIMI GLOBAL CATERING COMPANY,

             Defendants.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Gerald Bruce Lee, District Judge.  (1:05-cv-01418-GBL-TRJ)

Argued:  October 29, 2009          Decided:  January 6, 2010

Before TRAXLER, Chief Judge, and GREGORY and DAVIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** W. Clifton Holmes, KUBLI & ASSOCIATES, PC, Vienna, Virginia, for Appellant.  John Martin Faust, VINSON & ELKINS, Washington, D.C., for Appellees.  **ON BRIEF:** Alan M. Grayson,

Victor A. Kubli, GRAYSON & KUBLI, PC, Vienna, Virginia, for Appellant. Sharon Stagg, KBR, INC., Houston, Texas; Alden L. Atkins, Amy L. Riella, J. Randall Warden, VINSON & ELKINS, Washington, D.C., for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Barrington Godfrey brought this action under the False Claims Act ("FCA"), see 31 U.S.C.A. § 3729 (West 2003 & Supp. 2009) against KBR, Inc., Kellogg Brown & Root Services, Inc. (together referred to as "KBR"), a KBR employee, and three KBR subcontractors. Godfrey alleged that KBR violated the False Claims Act when it knowingly paid inflated invoices submitted to it by the subcontractors and then sought payment from the government based on those inflated costs. The district court dismissed Godfrey's amended complaint for failure to state a claim, but gave Godfrey leave to amend. Godfrey submitted a second amended complaint, and the district court again granted KBR's motion to dismiss. Godfrey appeals, and we affirm.

I.

KBR was awarded a prime contract under the Logistics Civil Augmentation Program ("LOGCAP") to provide dining facilities and meal service at various sites in Iraq. The LOGCAP contract was a cost-plus-fee-award contract, through which KBR was reimbursed its costs (up to a maximum amount) and was paid a base fee of 1% of those costs, with the opportunity to be awarded another 2% based on performance assessments by the government. KBR entered into subcontracts with defendants ABC International Group, Gulf Catering Co., and Tamimi Catering Co. In July 2004, Godfrey

3

began working for KBR as a contract administrator, and he supervised the relationship between KBR and the subcontractors.

According to the allegations in Godfrey's second amended complaint,[1] billing under the subcontracts "was supposed to be largely a function of 'head counts,' i.e., the actual number of personnel to whom food was served at each dining facility. The payment per meal ranged up to approximately $5 per 'head,' and the payment for a full day's meal was approximately $10 per 'head.'" J.A. 224. Godfrey, however, believed that the subcontractors were invoicing KBR based on greatly inflated headcounts. He alleged that ABC was claiming a headcount of 5000 per meal, when the actual headcount was about 2500 per meal; that Gulf was billing for a headcount of 5400 when the actual headcount never exceeded 1321; and that Tamimi "engaged in the same overcharging as ABC and Gulf," J.A. 232.

Godfrey also alleged other financial misconduct by the subcontractors. He alleged that ABC was to build a new dining

---

[1] Godfrey filed a sealed complaint in December 2005. The government declined to intervene, and the district court unsealed the complaint on May 1, 2007. Shortly thereafter, Godfrey filed an amended complaint. The district court dismissed that complaint, giving Godfrey the opportunity to file another complaint to cure the deficiencies. Godfrey eventually filed a second amended complaint, which was in large part identical to the prior complaint. Unless otherwise specified, the discussion of Godfrey's claims come from the allegations in his second amended complaint.

4

facility with a larger capacity, that it never built the facility but billed KBR as if the facility were in operation, and that ABC failed to provide 40% of the staffing that its contract with KBR required. Godfrey alleged that ABC billed KBR with rates reflecting new kitchen equipment that was never purchased and a new camp for its employees that was never built. Godfrey asserted that after a bomber attack on one of the dining facilities, KBR issued a "contract modification adding over $1 million in unnecessary charges to ABC's contract." J.A. 228. Godfrey also alleged that subcontractor Gulf likewise failed to provide the full level of staffing that its contract with KBR required, and that KBR modified Gulf's contract to authorize the purchase of temperature-controlled storage units. According to Godfrey, the government "had neither requested nor authorized this purchase," and "[t]he pricing was both unsupported and extremely exorbitant." J.A. 230. As to subcontractor Tamimi, Godfrey alleged in his complaint that it understaffed its dining facilities and deliberately withheld equipment and supplies required by its contracts with KBR. J.A. 232.

Godfrey alleged that KBR knew or should have known about the overcharging by the subcontractors, and that he specifically talked about these problems with Jamal Nasery, KBR's lead contract administrator for the dining facility subcontracts. Godfrey claims that KBR knowingly passed on these overcharges to

5

the government, because, given the pay structure under the LOGCAP contract, higher payments to subcontractors also meant higher fee-award payments from the government to KBR. Godfrey alleged that Nasery repeatedly threatened to fire Godfrey, and that subcontractor ABC eventually joined in these efforts. Godfrey was suspended for 10 days in December 2004. Godfrey alleged that after he was reinstated, "Nasery and others had made his work environment so hostile that Godfrey could not continue," J.A. 234, and Godfrey's employment with KBR terminated in February 2005.

In his substantive claims under the False Claims Act, Godfrey alleged that (1) KBR submitted false claims to the government by seeking payment for inflated invoices; (2) KBR made false statements in connection with claims made to the government, by falsely certifying compliance with all contract terms; (3) KBR and the subcontractors conspired to submit false claims to the government; and (4) he is entitled to participate in any recovery that the government might obtain from KBR should the government elect to proceed against KBR in an alternate proceeding.[2]

---

[2] Godfrey also alleged that KBR improperly harassed and retaliated against him for his investigation of the billing improprieties. The district court concluded that Godfrey was required to submit his retaliation claim to arbitration, and the (Continued)

The district court granted KBR's motion to dismiss the second amended complaint. The court concluded that the complaint failed to allege fraud with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure. The court further concluded that the complaint failed to allege that KBR had actually certified compliance with contract terms when presenting its claims to the government or that any term of the LOGCAP contract required such certification, that Godfrey failed to plead any terms of the relevant contracts that would show that the billing was improper, and that Godfrey failed to sufficiently allege an agreement to support the conspiracy claim. The district court dismissed count V, the "alternate proceeding" claim, as premature, since there was no indication that the government had settled with KBR.

II.

A.

Godfrey appeals, challenging the district court's dismissal of his first amended complaint and his second amended complaint. We review <u>de novo</u> a district court's grant of a motion to

court therefore severed that claim and dismissed it. Godfrey does not challenge that ruling on appeal.

7

dismiss.  See Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.

Moreover, because this action involves allegations of fraud, the complaint is also subject to Rule 9 of the Federal Rules of Civil Procedure, which requires that "the circumstances constituting fraud" be stated "with particularity."  Fed. R. Civ. P. 9(b); see Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783-84 (4th Cir. 1999) (applying Rule 9 to False Claims Act complaint).  To meet the requirements of Rule 9, an FCA complaint must "describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008) (quoting Harrison, 176 F.3d at 784)); see also United States ex rel. Bledsoe v. Cmty. Health

8

Sys., Inc., 501 F.3d 493, 509 (6th Cir. 2007) (explaining that to satisfy Rule 9, an FCA plaintiff must allege "the time, place, and content of the alleged misrepresentation . . .; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud."). "These facts are often referred to as the 'who, what, when, where, and how' of the alleged fraud." Wilson, 525 F.3d at 379 (internal quotation marks omitted).

B.

As is relevant to this case, the FCA prohibits (1) knowingly presenting a false or fraudulent claim for payment or approval, see 31 U.S.C.A. § 3729(a)(1); (2) knowingly using a false record or statement to induce the government to pay or approve a false or fraudulent claim, see 31 U.S.C.A. § 3729(a)(2); and (3) conspiring to induce the government to pay or approve a false or fraudulent claim, see 31 U.S.C.A. § 3729(a)(3). To prevail under the FCA, a plaintiff must therefore prove:

> (1) that the defendant made a false statement or engaged in a fraudulent course of conduct; (2) such statement or conduct was made or carried out with the requisite scienter; (3) the statement or conduct was material; and (4) the statement or conduct caused the government to pay out money or to forfeit money due.

United States ex rel. Harrison v. Westinghouse Savannah River Co., 352 F.3d 908, 913 (4th Cir. 2003).

9

The bulk of Godfrey's claims are based on his assertion that the subcontractors submitted to KBR invoices based on inflated headcounts and that KBR violated the FCA by including those inflated costs in the invoices it submitted to the government. The submission of an invoice based on an inflated headcount could amount to a false claim within the meaning of the statute, however, only if the contract <u>required</u> that billing be based on the actual number of meals served. If the contract based payment on some other metric -- for example, the cost of supplies purchased by the subcontractor -- an inflated headcount contained in an invoice would not lead to overpayment. Godfrey's complaint, however, fails to allege that the relevant contracts made payment dependent on the number of meals actually served. In fact, the second amended complaint alleges that billing under the subcontracts was "largely" based on headcounts, which in and of itself indicates that there were other factors relevant to the subcontractors' billing.[3]

---

[3] Moreover, Godfrey himself submitted documents affirmatively undermining his claims about the terms of the subcontracts. In response to KBR's motion to dismiss, Godfrey submitted to the district court portions of the contract between KBR and ABC. These portions of the contract, as modified on July 16, 2004, seem to establish fixed-price bands for given numbers of meals -- $2.6 million for a headcount of 5500; $2.7 million for a headcount of 6500; and $3.0 million for a headcount of 7500. J.A. 307. Because the lowest headcount band provided is 5500, it appears that the contract sets a minimum
(Continued)

The facts necessary to show that Godfrey is entitled to relief under the False Claims Act are the terms of the subcontracts. Godfrey's complaint, however, simply does not allege those necessary facts. Without allegations about the terms of the subcontracts, the complaint fails to sufficiently set forth the content of the false statements, as required by Rule 9. Although the failure to allege the requirements of the underlying contracts is the complaint's most significant shortcoming, we note that the complaint does not allege the specifics of anything -- the terms of the subcontracts, the amounts claimed by the subcontractors on the invoice, or the amounts that should have been claimed. The complaint fails to set forth the "who, what, when, where, and how of the alleged fraud," Wilson, 525 F.3d at 379 (internal quotation marks omitted), and the complaint therefore fails to satisfy the requirements of Rule 9. Godfrey's suggestion that he should be able to ferret out that kind of detail through discovery is without merit. See id. at 380 ("[I]f allowed to go forward, Relators' FCA claim would have to rest primarily on facts learned through the costly process of discovery. This is precisely what Rule 9(b) seeks to prevent.").

---

price that will be paid to the subcontractor, even if the number of meals actually served is less.

Godfrey also contends that the district court erred by rejecting a false certification claim that was based on allegations that were included in his first amended complaint but were omitted from his second amended complaint. We need not decide whether, as KBR contends, Godfrey waived this claim by failing to re-assert the relevant facts in his second amended complaint,[4] because, when we consider the allegations underlying Godfrey's certification claims, the claims were properly dismissed.

A false certification of contract compliance can give rise to liability under the False Claims Act if: "a government contract or program required compliance with certain conditions as a prerequisite to a government benefit, payment, or program; the defendant failed to comply with those conditions; and the defendant falsely certified that it had complied with the conditions in order to induce the government benefit." Harrison, 176 F.3d at 786. Godfrey did not allege that LOGCAP, the contract between KBR and the government, made payment

---

[4] In Young v. City of Mount Rainier, 238 F.3d 567 (4th Cir. 2001), we held that "if a claim is dismissed without leave to amend, the plaintiff does not forfeit the right to challenge the dismissal on appeal simply by filing an amended complaint that does not re-allege the dismissed claim," id. at 572-73, but we expressly declined to consider the waiver question where, as in this case, a claim is dismissed with leave to amend, see id. at 573 n.4.

contingent on compliance with any particular conditions, nor did he allege any facts to support his conclusory assertion that KBR in fact certified compliance. The allegations in the first amended complaint of any express or implied certification by KBR thus fail to meet the requirements of Rule 9. See United States ex rel. Gross v. AIDS Research Alliance-Chicago, 415 F.3d 601, 605 (7th Cir. 2005) (affirming dismissal of FCA complaint, noting that "where an FCA claim is based upon an alleged false certification of regulatory compliance, the certification must be a condition of the government payment in order to be actionable. The second amended complaint makes no such allegation.").

Moreover, the certification claim suffers from the overarching deficiency that we have already discussed -- the absence of any plausible allegations that the subcontractors' billing practices were improper under their contracts. According to Godfrey, the certifications, whether express or implied, were false because KBR paid the subcontractors money to which KBR knew they were not entitled. Because there are no allegations to support the underlying claim of improper billing, the certification claims necessarily fail as well.

Godfrey during oral argument seemed to suggest that his certification claim is also based on his assertions that the subcontractors failed to provide the staffing, equipment, etc.,

13

required under their contracts with KBR. Because there are no allegations that any contract required certification of compliance with contract terms, this argument fails, for the reasons discussed above. And to the extent that Godfrey believes that the failure to meet staffing or other contractual requirements can support an FCA claim on its own, without regard to a certification requirement, we disagree. These assertions amount to nothing more than a claim that KBR or the subcontractors breached the terms of their contracts and thus cannot give rise to liability under the act. See Wilson, 525 F.3d at 377 ("While the phrase 'false or fraudulent claim' in the False Claims Act should be construed broadly, it just as surely cannot be construed to include a run-of-the-mill breach of contract action that is devoid of any objective falsehood. . . . To hold otherwise would render meaningless the fundamental distinction between actions for fraud and breach of contract." (citation omitted)).

Because Godfrey's complaint fails to meet the pleading requirements of Rule 9, the district court properly dismissed count I (§ 3729(a)(1) -- false claims) and count II (§ 3729(a)(2) -- false statements).[5] Count III, alleging a

---

[5] The district court also dismissed count II because Godfrey did not allege that KBR presented the false statements to the government. As Godfrey points out, the Supreme Court, in
(Continued)

14

conspiracy between KBR and the subcontractors to violate the FCA, was also properly dismissed by the district court. The district court concluded that the complaint "failed to provide sufficient facts giving rise to an inference of a meeting of the minds and agreement sufficient to support a claim for conspiracy." J.A. 408. We agree. Moreover, the complaint fails to plead sufficient facts to show that the conspirators intended to defraud the government. See Allison Engine Co. v. United States ex rel. Sanders, 128 S. Ct. 2123, 2130 (2008) ("Where the conduct that the conspirators are alleged to have agreed upon involved the making of a false record or statement, it must be shown that the conspirators had the purpose of 'getting' the false record or statement to bring about the Government's payment of a false or fraudulent claim."). And as discussed above, Godfrey's complaint fails to allege sufficient facts to show even an individual violation of the False Claims Act by KBR or the subcontractors. Since Godfrey's conspiracy

_____

an opinion issued after the district court's decision in this case, rejected the presentment requirement as to claims made under § 3729(a)(2). See Allison Engine Co. v. United States ex rel. Sanders, 128 S. Ct. 2123, 2128-30 (2008). The district court's error on the presentment issue is irrelevant, however, because the district court also rejected count II for the reasons discussed above.

15

claim is premised on those claims of underlying FCA violations, the conspiracy claim rises and falls with the individual claims.

Finally, we conclude that the district court properly dismissed count V, through which Godfrey sought to participate in any alternate remedy that the government may pursue. See 31 U.S.C.A. § 3730(c)(5) ("Notwithstanding subsection (b), the Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty. If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section."); see also United States ex rel. LaCorte v. Wagner, 185 F.3d 188, 191 (4th Cir. 1999). Although the government declined to intervene in this action, there is nothing in the record suggesting that the government is in fact pursuing any alternate remedy against KBR. Moreover, any claim that Godfrey might have under § 3730(c)(5) would be against the government, not KBR or the other defendants in this action. In any event, because Godfrey's FCA claims have failed, he has no right to participate in any recovery by the government. See Bledsoe, 501 F.3d at 522 ("Absent a valid complaint which affords a relator the possibility of ultimately recovering damages, there is no compelling reason for allowing a relator to

16

recover for information provided to the government."); United States ex rel. Hefner v. Hackensack Univ. Med. Ctr., 495 F.3d 103, 112 (3d Cir. 2007) ("[A] relator is not entitled to a share in the proceeds of an alternate remedy when the relator's qui tam action under § 3729 is invalid.").

## III.

Accordingly, for the foregoing reasons, the district court's orders dismissing Godfrey's first amended complaint and second amended complaint are hereby affirmed.

AFFIRMED

17