David MIGDAL; Linda Rohrbaugh, Plaintiffs–Appellants,

v.

ROWE PRICE–FLEMING INTERNATIONAL, INCORPORATED; T. Rowe Price International Stock Fund; T. Rowe Price Growth Stock Fund; T. Rowe Price Associates, Incorporated; T. Rowe Price Retirement Plan Services, Incorporated; T. Rowe Price Investment Services, Incorporated, Defendants–Appellees,

and

M. David Testa; Martin G. Wade; Donald W. Dick, Jr.; Anthony W. Deering; Paul M. Wythes; James A.C. Kennedy, III; Hanne M. Merriman; James S. Riepe; Hubert D. Vos; David Fagin; T. Rowe Price Services, Incorporated, Defendants.

No. 00–1420.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 24, 2001.

Decided May 1, 2001.

**324**

**ARGUED:** Ronald Barry Rubin, Rubin & Monahan, Chartered, Rockville, MD, for Plaintiffs–Appellants. Daniel A. Pollack, Pollack & Kaminsky, New York, NY, for Defendants–Appellees. **ON BRIEF:** Joel C. Feffer, Wechsler Harwood, Halebian & Feffer, L.L.P., New York, NY, for Appellants. Anthony Zaccaria, Pollack & Kaminsky, New York, NY; David Clarke, Jr., Piper Marbury, L.L.P., Washington, DC, for Defendants–Appellees.

Before WILKINSON, Chief Judge, and WIDENER and WILLIAMS, Circuit Judges.

## OPINION

WILKINSON, Chief Judge:

Plaintiffs, shareholders of two mutual funds, sued the investment advisers of their funds for breach of fiduciary duty under § 36(b) of the Investment Company Act of 1940, ("ICA"), 15 U.S.C. § 80a–35(b). After twice permitting plaintiffs to amend their complaint, the district court dismissed the action with prejudice. Because plaintiffs have failed to state a claim that the fees charged by the funds' investment advisers were excessive in relation to the services they provided, we affirm the judgment of the district court.

### I.

#### A.

This appeal concerns the organization and governance of mutual funds. A fund, or "investment company," is typically organized by a sponsor, such as an investment management company or a financial institution. Most funds are externally managed—each fund contracts with an investment adviser to recommend and supervise the fund's investments. The investment adviser also provides varying levels of service to the fund, for instance, by providing the fund with office space and staff. A fund's investment adviser is typically affiliated with the entity which originally organized the fund.

The fund's board of directors is responsible for approving the advisory agreement setting the investment adviser's fee. *See* 15 U.S.C. § 80a–15(a), (c). Under the ICA, at least forty percent of a fund's directors must be "disinterested"—i.e., independent of the investment adviser. *See* 15 U.S.C. §§ 80a–10(a) & 80a–2(a)(19)(A). Furthermore, the advisory agreement between a fund and its investment adviser must be approved by a majority of the

fund's disinterested directors. *See* 15 U.S.C. § 80a–15(c).

## B.

Plaintiffs David Migdal and Linda Rohrbaugh are shareholders in the International Stock Fund and the Growth Stock Fund respectively. Both of these funds are part of the T. Rowe Price Fund Complex, and both are registered "investment companies" under the ICA. *See* 15 U.S.C. § 80a. Two T. Rowe Price affiliates serve as the investment advisers of plaintiffs' respective funds. Rowe Price Fleming International, Inc., is the International Stock Fund's investment adviser. T. Rowe Price Associates, Inc., is the Growth Stock Fund's investment adviser.

Plaintiffs filed an initial, and later an amended, complaint against these two investment advisers and various subsidiaries for breach of fiduciary duty under § 36(b) of the ICA, 15 U.S.C. § 80a–35(b). The district court dismissed the amended complaint for failure to state a claim upon which relief could be granted. The court, however, granted plaintiffs leave to re-amend their complaint.

On February 16, 1999, plaintiffs filed a second amended complaint, which again alleged violations of Section 36(b) of the ICA, 15 U.S.C. § 80a–35(b). The amended complaint asserted two related claims. First, plaintiffs alleged that the investment advisers breached their fiduciary duty under Section 36(b) because the fees they received were excessive. Second, plaintiffs contended that the "independent" directors of each of the mutual funds were not actually disinterested parties as required by the ICA. *See* 15 U.S.C. §§ 80a–10(a) & 80a–15(c). Specifically, several of the funds' disinterested directors served on the boards of between twenty-two and thirty-eight other funds within the T. Rowe Price Fund Complex. For their ser-

vices, these directors received aggregate compensation of either $65,000 or $81,000. Plaintiffs alleged that since forty percent of the boards were not disinterested, the advisory agreements could not have been properly approved as required by Section 15(c). Therefore, the defendant investment advisers breached their fiduciary duty under Section 36(b) by failing to negotiate their advisory agreements at arm's-length.

On March 20, 2000, the district court granted defendants' Rule 12(b)(6) motion with prejudice. The court held that plaintiffs had failed to plead sufficient facts to show that the compensation the investment advisers received was excessive. The court stated that the complaint's "level of generality remains too high," because the plaintiffs' allegations "do not remotely touch on the issue of what, if any, *relation* exists between the disputed fees on the one hand, and the services provided in consideration for their payment, on the other hand." The court also held that plaintiffs had failed to allege sufficient facts to show that the funds' directors were not "disinterested," and hence in violation of the ICA. Plaintiffs now appeal.

## II.

## A.

A Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir.1999). Furthermore, the "Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Rather,

Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2).

■ Rule 12(b)(6), however, is not without meaning. "The presence [ ] of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint" cannot support the legal conclusion. *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir.2001). And "[a]lthough the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant." 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 at 318 (2d ed.1990). This requirement serves to prevent costly discovery on claims with no underlying factual or legal basis. "Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition." *DM Research v. College of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir.1999).

### B.

Section 36(b) of the ICA creates a fiduciary duty in a mutual fund's investment adviser "with respect to the receipt of compensation for services." 15 U.S.C. § 80a–35(b). Section 36(b) also provides a private cause of action to a mutual fund investor, against the fund's investment adviser, "for breach of fiduciary duty in respect of such compensation" paid to the investment adviser by a fund.[1] *Id.* The plaintiff bears the "burden of proving a breach of fiduciary duty." 15 U.S.C. § 80a–35(b)(1).

■ Plaintiffs' first claim is that defendants violated Section 36(b) because the fees the investment advisers received from the fund were so disproportionately large that they bore no reasonable relationship to the services rendered. In *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923 (2d Cir.1982), the court exhaustively analyzed Section 36(b). *Gartenberg* concluded that the standard for determining whether compensation for managing a fund constitutes a breach of fiduciary duty is "whether the fee schedule represents a charge within the range of what would have been negotiated at arm's-length in the light of all of the surrounding circumstances." *Id.* at 928. The court reasoned that the typical arm's-length bargaining does not occur between an investment adviser and a mutual fund because the operations of the fund are conducted by the adviser. *Gartenberg* concluded, therefore, that to violate Section 36(b), "the adviser-manager must charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." *Id.*

■ Section 36(b) was enacted in large part because Congress recognized that as mutual funds grew larger, it became less

1. Section 36(b) states, in relevant part:
For the purposes of this subsection, the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, ... to such investment adviser or any affiliated person of such investment adviser. An action may be brought under this subsection ... by a security holder of such registered investment company on behalf of such company, against such investment adviser, or any affiliated person of such investment adviser, ... for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company ... to such investment adviser or person.
15 U.S.C. § 80a–35(b).

expensive for investment advisers to provide the additional services. Congress wanted to ensure that investment advisers passed on to fund investors the savings that they realized from these economies of scale. *See Fogel v. Chestnutt,* 668 F.2d 100, 111 (2d Cir.1981). Plaintiffs, however, do not make any allegations about excess profits from economies of scale here. Rather, they offer the following as evidence of "excessive fees." First, the amount of fees charged by the two funds. Second, the fact that two or three similar funds offered lower fee rates than the funds in this case, while simultaneously outperforming them. Third, the fact that the two funds in question did not meet their preselected benchmark performance standards. Fourth, the fact that despite the funds' underperformance, the defendant investment advisers' earnings increased by more than 20 percent.

The district court held that these allegations failed to state a claim because plaintiffs did not address in any way the relationship between the fees that the advisers received and the services which they provided in return. Several district courts have reached the same conclusion. *See, e.g., Krantz v. Prudential Investment Fund Mgmt., LLC,* 77 F.Supp.2d 559, 565 (D.N.J.1999) (dismissing excessive fees claim under Section 36(b) where plaintiff failed to make allegations about the services defendants rendered); *Strougo v. Scudder, Stevens & Clark, Inc.,* 964 F.Supp. 783, 805 (S.D.N.Y.1997) (same); *but see Krantz v. Fidelity Mgmt. & Research, Co.,* 98 F.Supp.2d 150 (D.Mass. 2000).

■ We agree with the district court. To survive a motion to dismiss, a complaint may not simply allege in a conclusory manner that advisory fees are "excessive." Instead, a plaintiff must allege facts that, if true, would support a claim that the fees at issue are excessive. As the district court correctly recognized, in order to determine whether a fee is excessive for purposes of Section 36(b), a court must examine the relationship between the fees charged and the services rendered by the investment adviser. *See Gartenberg,* 694 F.2d at 928 (to violate Section 36(b), "the adviser-manager must charge a fee that is so disproportionately large *that it bears no reasonable relationship* to the services rendered") (emphasis added).

Plaintiffs have failed to allege any facts pertinent to this relationship between fees and services. Specifically, while plaintiffs have challenged the fees that defendants charged, they have failed to allege sufficient facts about the services that defendants offered in return for those fees. For example, plaintiffs' comparison between the two underlying funds and three other mutual funds is not particularly meaningful precisely because it does not address the particular services offered by the defendants in this case.

■ Plaintiffs contend, however, that the evidence they have offered with respect to the funds' performance is the ultimate proxy for the services offered by the investment advisers. They argue that if a fund underperforms, the services of its investment adviser are worth less than those offered by the investment adviser of a better performing fund. While performance may be marginally helpful in evaluating the services which a fund offers, allegations of underperformance alone are insufficient to prove that an investment adviser's fees are excessive. Investing is not a risk-free endeavor. Even the most knowledgeable advisers do not always perform up to expectations, and investments themselves involve quite different magnitudes of risk. Furthermore, investment results are themselves cyclical. An underachieving fund one year may be an overac-

hieving fund the next. Accepting plaintiffs' invitation to permit discovery here because the funds underperformed would make it possible for other plaintiffs to state a claim in limitless actions filed under Section 36(b). The district court provided plaintiffs with three opportunities to allege something about the particular services offered by the funds' investment advisers. Plaintiffs failed to do so, and thus failed to state a claim that the fees charged by defendants were excessive.

■ Plaintiffs now seek discovery in order to uncover the elements which are currently missing from their Section 36(b) claim. While we certainly do not expect plaintiffs to prove a claim in their complaint, they must state a claim therein. Rule 12(b)(6) requires more than the mere recitation of boilerplate statutory language. While Rule 8 is a liberal standard, plaintiffs cannot simply promise the court that once they have completed discovery, something will turn up. Rather before they are permitted to proceed to discovery, plaintiffs must have some factual basis for believing that a legal violation has actually occurred. In this case, plaintiffs have alleged nothing to suggest that the investment advisers' fees are excessive. Accordingly, the district court was correct in ruling that plaintiffs failed to state a claim and thus satisfy the requirements of Rule 12(b)(6).

### C.

### 1.

■ Plaintiffs contend, however, that Section 36(b)'s private right of action is not limited solely to claims for excessive compensation. Rather, plaintiffs assert that they do not need to allege excessive fees because they instead alleged that the directors of the funds were not independent. Specifically, plaintiffs alleged that the dis-interested directors served on multiple boards within the T. Rowe Price Fund Complex and they were substantially remunerated for their service. Plaintiffs therefore contend that the defendant investment advisers breached their fiduciary duty under Section 36(b) by bargaining at less than arm's-length with the funds' directors.

■ Plaintiffs' position, however, is not supported by either the statutory text or the caselaw. Section 36(b) imposes on an investment adviser a "fiduciary duty *with respect to the receipt of compensation for services.*" 15 U.S.C. § 80a–35(b) (emphasis added). And Section 36(b) grants individual investors a private right of action only "for breach of fiduciary duty *in respect of such compensation.*" *Id.* (emphasis added). As the statutory text indicates, Section 36(b) is sharply focused on the question of whether the fees themselves were excessive, and not on the status of the directors who approved them. Congress passed Section 36(b) primarily to address the concern that "advisers' fees, generally stated as a percentage of the market value of the managed assets, which had been altogether reasonable when a fund was launched, may have become unreasonably high when the fund grew to enormous size." *Fogel,* 668 F.2d at 111. Other sections of the ICA address the independence of the funds' directors. For instance, Section 10(a) addresses the composition of a fund's board of directors, and Section 15(c) addresses the requisite percentage of disinterested directors necessary to ratify an advisory agreement. *See* 15 U.S.C. §§ 80a–10(a) & 80a–15(c). Furthermore, Section 36(a) imposes a general fiduciary duty upon both the directors and investment advisers of a fund. *See* 15 U.S.C. § 80a–35(a). Section 36(b) was not enacted to provide a cause of action separate from Section 36(a) to govern the di-

rectors' independence or the investment adviser's general performance.

For this reason, most of the cases decided under Section 36(b) are narrowly focused on disproportionate, excessive, or unearned fees. *See, e.g., Meyer v. Oppenheimer Mgmt. Corp.*, 895 F.2d 861, 866 (2d Cir.1990); *Krinsk v. Fund Asset Mgmt., Inc.*, 875 F.2d 404, 409 (2d Cir.1989); *Kalish v. Franklin Advisers, Inc.*, 742 F.Supp. 1222, 1227 (S.D.N.Y.1990), *aff'd*, 928 F.2d 590 (2d Cir.1991); *see also In re Nuveen Fund Litig.*, No. 94 C 360, 1996 WL 328006, at *14 (N.D.Ill. June 11, 1996) ("Accordingly, every court addressing a § 36(b) claim has required the plaintiff to demonstrate that the compensation or payment received by the investment adviser was disproportionate to the services rendered."); *but see Krantz v. Prudential Invs.*, 77 F.Supp.2d at 565; *Green v. Nuveen Advisory Corp.*, 186 F.R.D. 486 (N.D.Ill.1999); *Green v. Fund Asset Mgmt., L.P.*, 19 F.Supp.2d 227 (D.N.J. 1998).[2]

■■■■ Thus, if this claim for general breach of fiduciary is to be brought, it must be done under some other section of the ICA, or alternatively under state law. Section 36(b) is limited to cases where there was excessive compensation. Allegations about the status of directors with whom fee negotiations took place relate too tangentially to the simple question of whether the investment advisers received excess compensation for the services they rendered. Once again, as the district court recognized, plaintiffs failed to address the relationship between fees and services in their complaint. General breach of fiduciary duty claims which involve merely an incidental or speculative effect on advisory fees are not properly within the scope of Section 36(b).

## 2.

■■■■ Even assuming that claims beyond those simply for excessive compensation are cognizable under Section 36(b), the district court correctly dismissed plaintiffs' claim. Plaintiffs have failed to properly allege that the funds' disinterested directors were actually "interested" under the ICA. Thus, plaintiffs' theory that the investment advisers breached their fiduciary duty under Section 36(b) by negotiating the advisory agreements with the directors fails.

The ICA requires that at least forty percent of an investment company's directors be "disinterested," 15 U.S.C. § 80a–10(a), and that every agreement with an investment adviser be approved by a majority of the disinterested directors. *See* 15 U.S.C. § 80a–15(c). "Disinterested" directors are, *inter alia*, those directors who are not "affiliated" with the fund's investment adviser-i.e., they are not "controlled" by the investment adviser. *See* 15 U.S.C. §§ 80a–2(a)(19) & 80–2(a)(3). "Control" is "the power to exercise a controlling influence over the management or policies of a [fund], unless such power is solely the result of an official position with such[fund]." 15 U.S.C. § 80a–2(a)(9). The ICA, however, expressly creates a

---

**2.** The district court cases which have expanded the scope of Section 36(b) beyond claims for excessive fees have universally relied on the Second Circuit's opinion in *Galfand v. Chestnutt Corp.*, 545 F.2d 807 (2d Cir.1976). However, contrary to the district courts' analyses, *Galfand* cannot be read to expand the scope of the private right of action under Section 36(b). *Galfand* interpreted Section 36(b) to provide a cause of action against an investment adviser for inadequate disclosure of information regarding a fee agreement, which permitted the investment adviser to obtain a higher, unjustified fee. *Galfand*, 545 F.2d at 811–12. Thus, *Galfand* was about the excessive fees which ensued from the fee arrangement, not about the disinterestedness of the independent directors.

presumption against control, stating that a "natural person shall be presumed not to be a controlled person within the meaning of this subchapter." *Id.* This presumption, however, may be rebutted by "evidence." *Id.*

As evidence that the disinterested directors were in fact interested parties, plaintiffs alleged the following. First, that the funds' disinterested directors served on the boards of directors of between twenty-two and thirty-eight other funds within the T. Rowe Price Fund Complex. Second, that these directors received, in aggregate, $65,000 or $81,000 for their services on these multiple boards. Third, that because of their obligations to so many funds, the directors could not spend enough time on each particular fund. Fourth, that the directors were dependent on the investment advisers for information and for their positions on the boards.

However, plaintiffs have failed to allege any facts that, if true, would support a claim that the disinterested directors were actually interested. As an initial matter, neither the ICA nor the SEC proscribes the use of multi-board membership within mutual fund complexes. *See Krantz v. Fidelity Mgmt.*, 98 F.Supp.2d at 154–55. In fact, membership on the boards of several funds within a mutual fund complex is the prevailing practice in the industry. *See Olesh v. Dreyfus Corp.*, Fed. Sec. L. Rep. (CCH) ¶ 98,603, 1994 WL 780179 (E.D.N.Y. Aug.15, 1994). The SEC has noted that "interlocking boards of directors within an investment complex are neither prohibited nor uncommon." *Id.* (*citing In the Matter of the Vanguard Group, Inc.*, SEC Release No. 11645, 1981 SEC Lexis 1981, at *16 n. 35 (Feb. 25, 1981)). Indeed, the SEC has recently reaffirmed its position that "a director of a fund who also is a director of another fund managed by the same adviser generally would not be viewed as an interested person of the fund under section 2(a)(19) solely as a result of this relationship." *Interpretive Matters Concerning Independent Directors of Investment Companies*, [1999–2000 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 86,211 at 82,440 (Oct. 14, 1999) (*citing* H.R.Rep. No. 1382, 91st Cong., 2d Sess. 15 (1970); S.Rep. No. 184, 91st Cong., 2nd Sess. 34 (1969), U.S.Code Cong. & Admin.News 1970, p.4943 ("a director of one investment company would not ordinarily be deemed an interested person of that company by reason of being a director of another investment company with the same adviser")).

Several courts have likewise held that the fact that a director serves on multiple boards within a fund complex is insufficient to demonstrate control. *See Krantz v. Fidelity Mgmt.*, 98 F.Supp.2d at 157 (dismissing claim that overlapping service on 237 boards with compensation ranging between $220,500 and $273,500 rendered directors "interested") (*citing Krantz v. Prudential Invs.*, 77 F.Supp.2d at 563 (dismissing claim that overlapping service on between fifteen and thirty-eight boards with an average compensation of $90,000 rendered directors "interested")); *Olesh v. Dreyfus Corp.*, Fed. Sec. L. Rep. (CCH) ¶ 98,907, 1995 WL 500491 (E.D.N.Y. Aug.8, 1995) (holding that directors who sat on over fifteen boards and received over $50,000 in compensation were not interested); *but see Strougo v. Bassini*, 1 F.Supp.2d 268, 273–75 (S.D.N.Y.1998); *Strougo v. Scudder, Stevens & Clark, Inc.*, 964 F.Supp. 783, 795 (S.D.N.Y.1997).

The parties obviously have very different views about the practice of directors serving on the boards of multiple funds. Plaintiffs suggest that there is a danger of directors being spread too thin and becoming overly dependent on investment advisers. Defendants contend to the contrary

that directors of multiple funds can become conversant with a wide variety of investment opportunities and practices, which can be put to beneficial use in managing particular assets. Furthermore, defendants suggest this practice can reduce costs through the sharing of investment information among funds and by reducing the need for fund directors to learn about securities from the ground up.

As a legal matter, we think this whole debate is beside the point. The fact that directors of the funds might be busy does not suggest that they were in any way "interested" as defined by the ICA. *See* 15 U.S.C. § 80a–2(a)(19). Likewise, plaintiffs' assertions that the directors were dependent on the investment advisers for information sheds no light on the question of whether the directors are disinterested. One would expect any conscientious director to request information from management and staff on the day-to-day operations for which they are responsible. The ICA itself approves this very practice. "It shall be the duty of the directors of a registered investment company to request and evaluate, and the duty of an investment adviser to such company to furnish, such information as may reasonably be necessary to evaluate the terms of any contract whereby a person undertakes regularly to serve or act as investment adviser of such company." 15 U.S.C. § 80a–15(c).

There is a presumption under the ICA that natural persons are disinterested, *see* 15 U.S.C. § 80a–2(a)(9), which plaintiffs' evidence simply fails to counteract. Plaintiffs have thus failed to state a claim that the funds' disinterested directors are in fact interested.

### III.

The Investment Company Act balances the tension between protecting mutual fund investors from overly generous charges by investment advisers, and shielding fund management from an outbreak of harassing lawsuits. Any change in this balance will have to come from Congress. We are satisfied, however, that the district court properly applied the present statutory provisions. The district court provided plaintiffs with three opportunities to state a cognizable claim under Section 36(b). They failed to do so. For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*