195 F.3d 692 (4th Cir. 1999)
 THELMA VIRGINIA GRAYSON, Administrator of the Estate of Gerald Anthony Collins, Plaintiff-Appellant,
v.
CARL R. PEED, Sheriff of Fairfax County; M. E. ROYER; FAIRFAX COUNTY BOARD OF SUPERVISORS; UNNAMED AND UNKNOWN SHERIFF'S DEPUTIES; OTHER UNKNOWN POLICE OFFICERS OF FAIRFAX COUNTY, Defendants-Appellees,
and
TYSON CORNER LLC, Defendant.
 No. 98-2835 (CA-98-613-A).
 UNITED STATES COURT OF APPEALS, FOR THE FOURTH CIRCUIT.
 Argued: September 23, 1999.
Decided: November 5, 1999.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.
 Albert V. Bryan, Jr., Senior District Judge.
 COUNSEL ARGUED: Neil Lawrence Henrichsen, MITTERHOFF, HENRICHSEN & STEWART, P.L.L.C., Washington, D.C., for Appellant. Peter Donald Andreoli, Jr., OFFICE OF THE COUNTY ATTORNEY, Fairfax, Virginia; John J. Brandt, BRANDT, JENNINGS, ROBERTS, DAVIS & SNEE, P.L.L.C., Falls Church, Virginia, for Appellees. ON BRIEF: Lorraine M. Magee, MITTERHOFF, HENRICHSEN & STEWART, P.L.L.C., Washington, D.C., for Appellant. David P. Bobzien, Robert Lyndon Howell, OFFICE OF THE COUNTY ATTORNEY, Fairfax, Virginia; Robert S. Corish, BRANDT, JENNINGS, ROBERTS, DAVIS & SNEE, P.L.L.C., Falls Church, Virginia, for Appellees.
 Before WILKINSON, Chief Judge, KING, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 Affirmed by published opinion. Chief Judge Wilkinson wrote the opinion, in which Judge King and Senior Judge Butzner joined.
 OPINION
 WILKINSON, Chief Judge:
 
 
 1
 On March 25, 1995, Gerald Collins was arrested and transported to the Fairfax County Adult Detention Center. The following day Collins was declared brain dead. Appellant brought suit on behalf of Collins' estate pursuant to 42 U.S.C. § 1983 alleging that the arresting officer, the sheriff in charge of the detention center, and Fairfax County had violated Collins' constitutional rights. The district court granted summary judgment to all defendants. We affirm.
 
 I.
 
 2
 In the early evening of March 25, 1995, two security officers found Gerald Anthony Collins "acting crazy," but apparently not violently, in a men's restroom at the Tysons Corner Mall in Virginia. One of the security officers called 911 and requested an ambulance. Mark Royer, a Fairfax County Police Officer on off-duty employment at the mall, then arrived on the scene. Royer approached Collins as he lay on the floor of the restroom repeating over and over, "I love everyone." Royer began to handcuff Collins. He resisted. Royer then decided to restrain Collins in the SIT (Subject Immobilization Technique) position. Other police officers arrived. Royer and another officer searched Collins' backpack. They found two film canisters -one contained marijuana and the other what they believed to be PCP. Royer then arrested Collins.
 
 
 3
 Collins was taken to a police van and transported to the Fairfax County Adult Detention Center (ADC). At the ADC a magistrate issued arrest warrants charging Collins with possession of marijuana and PCP. An ADC deputy then booked Collins. Throughout this period Collins was acting irrationally, his speech was slurred, and he kept repeating in an intoxicated manner, "I can't believe this is all over a traffic ticket." Collins was then taken into a cell and strip searched. Royer observed the search in order to take possession of any contraband. At the conclusion of the search Collins attempted to crawl out of his cell. A struggle ensued and Royer and one of the ADC deputies sprayed Collins with pepper spray. The deputies were ultimately able to push Collins back into the cell. The rest of the night passed without incident.
 
 
 4
 At around 5:30 the next morning, Collins was again acting belligerently. Collins was sticking his arm through the food slot of his cell. Officers on the scene ordered Collins to get his hand back in his cell. He refused. In an attempt to distract Collins, one of the officers opened the door of his cell slightly. Collins reacted by jamming his foot in the doorway. While several officers kept force on the door to ensure that it could not be opened any further, officers attempted to spray Collins with pepper spray. The decision was then made to move Collins to another cell. A five-man cell extraction team first pinned Collins face down. During the course of the struggle Collins was punched seven to nine times. Once restrained, the officers carried Collins face down to an adjoining cell. Collins continued to act violently. As a result, the officers moved Collins to yet another cell and placed him in four-point restraints.
 
 
 5
 A few minutes later Collins appeared to be unconscious. Medics checked his pulse on two occasions and observed that he was okay. Another officer then noticed that Collins was not breathing. CPR was initiated and Collins was taken to Fairfax Hospital. At the hospital, a neurologist found Collins to be brain dead. The next day, Collins was taken off life support and pronounced dead.
 
 
 6
 Thelma Grayson, Collins' mother and administrator of his estate, filed suit against a variety of defendants under 42 U.S.C. § 1983. She also filed state law claims of negligence, gross negligence, and negligent training and supervision. The district court granted summary judgment to all defendants on the § 1983 claims and declined to exercise supplemental jurisdiction over the state claims. Grayson now appeals the grant of summary judgment on the § 1983 claims against Officer Royer, Sheriff Carl Peed (the sheriff in charge of the ADC), and Fairfax County. We address appellant's claims against each defendant in turn.
 
 II.
 A.
 
 7
 Appellant first challenges Officer Royer's decision to take Collins to the ADC rather than to a hospital. Appellant argues that this decision reflected a "`deliberate indifference to [Collins'] serious medical needs'" and thus violated the Due Process Clause of the Fourteenth Amendment. Martin v. Gentile, 849 F.2d 863, 870-71 (4th Cir. 1988) (quoting Estelle v. Gamble, 429 U.S. 97, 104-06 (1976)).
 
 
 8
 We disagree. In order to establish a claim of deliberate indifference to medical need, the need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective. See Martin, 849 F.2d at 870-71. In this case there was no objective evidence available to Officer Royer at the time of the incident that Collins had a serious need for medical care. See Belcher v. Oliver, 898 F.2d 32, 35 (4th Cir. 1990). While appellant has now brought forward an expert witness to testify that Royer should ideally have "committed [Collins] to a medical facility," the expert's opinion is nothing more than impermissible 20/20 hindsight. See Graham v. Connor, 490 U.S. 386, 396 (1989). For at the time of their encounter, Collins exhibited to Royer no visible external injuries. He did not have trouble breathing. He was not bleeding, was not vomiting or choking, and was not having a seizure. Furthermore, Collins was conscious, at least somewhat responsive, and able to answer questions.
 
 
 9
 Collins did have an enlarged heart and had previously been diagnosed with congestive heart failure. But the only person on the scene who knew this information was Collins himself. Collins did not inform Officer Royer or any other officer involved of this prior medical history. The law cannot demand that officers be mind readers. The medical circumstances that led to Collins' death did not even manifest themselves until the following morning, more than ten hours after Officer Royer decided to take Collins to the ADC rather than to a hospital.
 
 
 10
 Moreover, Officer Royer could reasonably conclude that taking Collins to the ADC would not prevent him from receiving needed medical attention. The ADC had trained medical personnel on duty 24 hours a day. On the evening in question, Jose Laborde, an army-trained practical nurse and a Virginia licensed correctional health assistant, was on duty. Further, Officer Royer alerted the ADC staff of Collins' possible PCP intoxication. Royer was, therefore, in no sense deliberately indifferent to Collins' medical needs.
 
 
 11
 Deliberate indifference is a very high standard-a showing of mere negligence will not meet it. See Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). At the most, Officer Royer's decision to take Collins to the ADC rather than to a hospital was a simple mistake. But the Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences. This is precisely why the Supreme Court has seen fit to stress that deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986); see also Farmer v. Brennan , 511 U.S. 825, 835-36 (1994). To lower this threshold would thrust federal courts into the daily practices of local police departments.
 
 
 12
 Collins' claim illustrates this very risk. His is unfortunately a typical case. His symptoms hardly distinguish him from the multitude of drug and alcohol abusers the police deal with everyday. Collins was found in possession of drugs while acting irrationally and slurring his speech. However, an officer could hardly be faulted under Estelle for believing that Collins needed nothing so much as to sleep it off. To accept appellant's claim would be to mandate as a matter of constitutional law that officers take all criminal suspects under the influence of drugs or alcohol to hospital emergency rooms rather than detention centers. That would be a startling step to take.
 
 B.
 
 13
 Appellant would next hold Sheriff Peed liable under§ 1983 for his role in running the ADC. Appellant argues that the policies, customs, and training at the ADC were inadequate and that these shortcomings caused Peed's employees to be deliberately indifferent to Collins' serious medical needs and to use excessive force against Collins. This claim fails for a variety of reasons, most notably because Peed's officers have not violated any of Collins' constitutional rights. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).
 
 
 14
 None of Sheriff Peed's officers was deliberately indifferent to Collins' medical need either at the time of booking or during his custody at the detention center. Laborde, a trained medic, was on hand in the booking area. He found Collins calm and discerned no sign of any medical problem. The subsequent actions of ADC officers hardly amount to deliberate indifference. Appellant argues that the officers were deliberately indifferent to Collins' medical needs by twice failing to clean pepper spray off of Collins in a timely manner. But the failure to wash the pepper spray off Collins after its first use was due to Collins' own intransigence. Although an ADC officer offered to wash the spray off, Collins responded by yelling and kicking at the officer. And, Collins was rushed to the hospital within such a short time after the second use of pepper spray that ADC personnel could not reasonably be expected to have cleaned off the residue.
 
 
 15
 Appellant's claim that ADC officers used excessive force against Collins also fails. The force applied by ADC officers was "`in a good faith effort to maintain or restore discipline,'" and thus not violative of the Due Process Clause of the Fourteenth Amendment. See Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998) (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). For example, Collins' attempt to force his way out of the cell after being strip searched necessitated the use of pepper spray. Collins also initiated the food slot incident. He stuck his arm through the slot, thereby posing a danger to officers who might walk by his cell. He refused to relent, even after repeated entreaties. Collins was then able to jam his foot in the doorway of his cell. The subsequent restraining measures were necessary to subdue Collins.
 
 
 16
 In dealing with such agitated detainees prison officials must not be forced to walk a tightrope and face the prospect of a lawsuit no matter which way they turn. See Gooden v. Howard County , 954 F.2d 960, 967 (4th Cir. 1992) (en banc). If officers attempt to restrain a detainee such as Collins, they risk an excessive force claim. On the other hand, if they fail to restrain such a detainee they could be subject to another lawsuit brought by other detainees or even the obstreperous detainee himself. See Farmer v. Brennan, 511 U.S. 825, 833 (1994) (prison officials can be held liable for failing to protect one prisoner from harm caused by other prisoners); Lee v. Downs , 641 F.2d 1117, 1121 (4th Cir. 1981) ("[P]rison officials have a duty to protect prisoners from self-destruction or self-injury."). Here the officers obviously felt the need to subdue Collins, either to calm the general environment or to prevent Collins from hurting himself. If we failed to accord due deference to the officers' efforts, we would give encouragement to insubordination in an environment which is already volatile enough.
 
 
 17
 Even if there were constitutional violations committed by one of his employees, Sheriff Peed still could not be held liable as appellant has not pointed to any actionable deficiency in Sheriff Peed's policies, customs, or training. For example, appellant complains that there was "no official policy regarding whether to send in cell extraction teams when an inmate refused to either close a food slot or return a food tray." This absence of a food tray policy, appellant says, manifests deliberate supervisory indifference. Sheriff Peed, however, was well within his rights to leave the managing of such daily mishaps of institutional life to the discretion of correctional officials. It will often be the case that policy guidance cannot replace the exercise of individual judgment in handling a difficult situation as it arises. The blend of policy guidance and discretionary judgment that goes into the difficult task of prison management must be foremost a penological decision rather than a judicial one. Moreover, state correctional guidelines often exceed constitutional requirements and appellant's own expert penologist conceded that Peed's policies met the standards of both the Virginia Board of Corrections and the American Correctional Association. And even if these guidelines were not always followed, appellant's alleged isolated infractions hardly satisfy her "heavy burden of proof" in showing Peed's "continued inaction in the face of documented widespread abuses." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).
 
 
 18
 Appellant's claims that Peed provided inadequate training for his employees must also fail. As of the time of this incident, the ADC had been accredited for more than ten years by both the American Correctional Association and the National Commission on Correctional Health Care, two organizations whose training requirements often surpass minimal constitutional standards. Moreover, appellant has not explained how any deficiency in training "actually caused" a constitutional violation of any sort. City of Canton v. Harris, 489 U.S. 378, 391 (1989). Given Collins' drug use, cardiac condition, and violent propensities, it is not clear that any amount of training would have prevented his death.
 
 C.
 
 19
 Appellant's claims against Fairfax County also fail. As there are no underlying constitutional violations by any individual, there can be no municipal liability. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). Additionally, there can be no county liability here because under Virginia law Fairfax County has no control over the internal administration of the ADC. See Strickler v. Waters, 989 F.2d 1375, 1390 (4th Cir. 1993). Rather, the State Board of Corrections tells Sheriff Peed what he has to do in running the jail, and the State Department of Criminal Justice Services tells the Sheriff what he must do to train his employees. See Va. Code Ann. § 53.1-68(A)-(C) (Michie 1998). As the county has no control over policy within the jail, it bears no concomitant responsibility. See Monell v. Department of Social Servs., 436 U.S. 658, 694 (1978).
 
 III.
 
 20
 The death of any detainee is a sad occurrence. But neither Officer Royer, Sheriff Peed, nor Fairfax County can be held responsible for the PCP ingestion and cardiac condition that apparently led to this unfortunate event. The judgment of the district court is hereby
 
 
 21
 AFFIRMED.