Affirmed in part and reversed in part by published opinion. Judge SHEDD wrote the opinion, in which Judge TRAXLER concurred except as to Part 11(A). Judge TRAXLER wrote an opinion concurring in part and concurring in the judgment.
Judge NIEMEYER wrote an opinion concurring in the judgment in part and dissenting in part.
OPINION
SHEDD, Circuit Judge:
International Ground Transportation, Inc. (“IGT”)[1] brought this action under 42 U.S.C. § 1983 against the Mayor and City Council of Ocean City, Maryland (“the City”), and against individual officials of Ocean City (“the individual defendants”), seeking recovery for damages to its taxicab business incurred as a result of alleged unconstitutional acts by the City and the individual defendants. A jury returned a verdict in favor of IGT against the City and awarded $250,000 in compensatory damages; however, the jury found the individual defendants not liable. The City then moved for judgment as a matter of law, arguing that a finding of no liability on the part of the individual defendants precluded a finding that the City was liable and that IGT failed to prove damages with sufficient particularity to support the jury’s damages award. IGT also moved for judgment as a matter of law, contending that the evidence established that the individual defendants were liable as a matter of law.. Without explanation, the district court granted the City’s motion and denied IGT’s motion, and IGT now appeals. For the reasons set forth below, we affirm in part and reverse in part.
I
IGT is a taxicab company that formerly operated in Ocean City.[2] After opening in May 2002, IGT saw a steady increase in business and revenue from advertisements in its vehicles, a voucher system with a local hospital, and a promotional program driving patrons from bars. By April 2003, IGT had grown from 14 to 60 taxicabs and was the largest taxicab company in Ocean City.
To operate in Ocean City, a taxicab must pass two inspections. First, the vehicle must be inspected by a station licensed by the Automotive Safety Enforcement Division of the Maryland State Police. After receiving an inspection certificate from the station, the taxicab must be inspected by the Ocean City Police Department (“OCPD”). After the vehicle passes both inspections, OCPD issues an inspection certification decal which must be displayed in the rear window of the taxicab. Inspection certification decals expire on April 30 of each year.
In April 2003, OCPD scheduled inspection for IGT’s fleet of taxicabs, each of which had been inspected at state inspection stations at a prior time. Shortly before the date of the OCPD inspection, however, OCPD notified IGT that the OCPD inspection must occur within 90 days of the state inspection. Because many of its ve- *217 hides had undergone their state inspection more than 90 days before the scheduled OCPD inspection, IGT was forced to act quickly to have the taxicabs reinspected at state stations. Unable to locate a station that could handle the volume of inspections in the immediate area, IGT had many of its taxicabs inspected at Oliver’s Automotive (“Oliver’s”), an inspection station in Waldorf, Maryland. The taxicabs were then taken to OCPD, where they passed inspection and received inspection certification decals.
Shortly thereafter, OCPD instructed IGT to bring several of its vehicles to the OCPD station. Upon arrival, two Maryland state troopers inspected IGT’s taxicabs, apparently as part of an investigation into Oliver’s. After inspecting several of IGT’s taxicabs, the state troopers issued three safety equipment repair orders. All of IGT’s licensed vehicles remained in operation.
On May 21, 2003, IGT received a letter from OCPD bearing the signature of OCPD Chief Bernadette DiPino. This letter advised IGT that “every vehicle you are currently operating in Ocean City is suspended and is to be removed from service until such time as you have each vehicle reinspected by a certified inspection station.” J.A. 799. OCPD issued the letter to IGT after receiving information from the state troopers who were investigating Oliver’s. The state troopers informed OCPD that they doubted the sufficiency of the inspections at Oliver’s and that any vehicles inspected there may be unsafe. The troopers further informed OCPD that, of the six IGT taxicabs they had inspected, five had “obvious defects” with respect to the suspension, exhaust system, emissions, mirrors, seatbelts, steering, brakes, wipers, and/or tires. J.A. 801. The troopers noted that
[a]ll of the defects, with the exception of the Tire [sic ], appeared to have been on the cabs for quite some time, and would have certainly been present at the time they were State Inspected [at Oliver’s]. Four of the vehicles with defects were State Inspected at Oliver’s Automotive .... Based on the quantity of defects found on a random sampling of cabs inspected, there is a strong possibility that many more cabs would also have defects still existing. All of the defects found were obvious in nature and found without the use of inspection tools.

Id.

On June 5, 2003, DiPino issued a letter inviting IGT to the next regularly scheduled Police Commission meeting, set for June 11, 2003, “in an effort to resolve [its] licensing issue.” J.A. 803. The owners of IGT, Brian and Teresa Hamilton, attended the meeting along with their counsel. The purpose of the meeting, however, was not to provide a forum in which IGT could challenge the suspension of its taxicab licenses through the presentation of argument and evidence. At the meeting, OCPD officer Hugh Bean reported on IGT’s failure to pass some vehicle inspections and that IGT’s taxicabs had been temporarily de-licensed pending reinspection.
IGT subsequently brought suit against the City and the individual defendants: DiPino, Mayor James N. Mathias, and Police Commission members James S. Hall and Joseph T. Hall. IGT alleged that the City and the individual defendants acted unilaterally to revoke their taxicab licenses without following the provisions of the United States Constitution and Maryland state law. Specifically, IGT alleged that the City and the individual defendants violated its rights to procedural and substantive due process, equal protection, the abil *218 ity to engage in interstate commerce, and various Maryland state constitutional provisions. IGT sought actual and punitive damages, contending that its business was decimated by the revocation of its taxicab licenses, especially as the suspension of its taxicab fleet occurred shortly before the busy Memorial Day weekend. IGT alleged that its voucher revenue decreased from as much as $6,000 per month to $1,000 per month, that it lost advertising revenue of $250,000 per year, that its business went from a value of $4 million to become defunct, and that it was faced with over $2 million in total debt.
The City and the individual defendants denied many of the allegations made by IGT and asserted numerous defenses. The defendants’ principal argument was that they had acted in an emergency situation to remove IGT’s unsafe taxicabs from the streets of Ocean City. They maintained that the emergency nature of the threat presented by IGT’s vehicles justified a de-licensing of the taxicabs without a pre-deprivation hearing. They also asserted a defense of qualified immunity.
The case was tried to a jury. At the close of evidence, the defendants moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a). The district court granted the motion as to IGT’s claims for punitive damages on the state-law violations but denied the motion in all other respects. The court instructed the jury extensively on the constitutional issues involved in the case and specifically charged the jury that it could find the individual defendants not liable based on qualified immunity. The jury returned a verdict in favor of IGT against the City but returned a verdict in favor of the individual defendants. More specifically, the jury answered “No” when asked whether the individual defendants “deprived White’s Taxi of procedural due process ... substantive due process ... equal protection ... [or] its ability to engage in interstate commerce.” J.A. 826-27. The jury then answered “Yes” when asked whether the City “deprived White’s Taxi of procedural due process [or] substantive due process.” J.A. 827. Finally, the jury awarded IGT $250,000 in actual damages.
Following the verdict, both parties moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b). IGT maintained that the evidence presented at trial established as a matter of law that the individual defendants had deprived it of its rights to procedural and substantive due process and that they had not established a qualified immunity defense. The City opposed IGT’s motion and argued instead that it was entitled to judgment as a matter of law. The City presented two grounds in support of its motion: (1) the jury’s finding that the individual defendants were not liable precluded a finding of liability on the part of the City, and (2) IGT had failed to present evidence establishing its entitlement to damages. The district court, without issuing an opinion, granted the City’s motion and denied IGT’s motion. This appeal followed.
II
We review de novo the grant or denial of a motion for judgment as a matter of law. Anderson, 247 F.3d at 129. Judgment as a matter of law is proper when the court determines that “there is no legally sufficient evidentiary basis” for a reasonable jury to find for the non-moving party. Fed.R.Civ.P. 50(a). When a jury verdict has been returned, judgment as a matter of law may be granted only if, viewing the evidence in a light most favorable to the non-moving party (and in support of the jury’s verdict) and drawing every legitimate inference in that party’s favor, the only conclusion a reason *219 able jury could have reached is one in favor of the moving party. Figg v. Schroeder, 312 F.3d 625, 635 (4th Cir.2002).
IGT contends that the district court erred in granting the City’s motion for judgment as a matter of law. The district court did not explain its reasons for granting the motion but instead simply ordered that the motion be granted. Because the City set forth two grounds in support of its motion, we must examine each to ascertain whether the district court’s order can stand.
A.
The City first asserts that it is entitled to judgment as a matter of law because a finding that the individual defendants were not liable precludes a finding that the City is liable. We disagree.
In support of its position that it cannot be held liable, the City relies primarily on City of Los Angeles v. Heller, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986), and Grayson v. Peed, 195 F.3d 692 (4th Cir.1999). In Heller, the Supreme Court held that a municipality may not be found liable for a constitutional violation in the absence of an unconstitutional act on the part of at least one individual municipal actor. 475 U.S. at 798-99, 106 S.Ct. 1571. We reaffirmed this principle in Grayson and have applied it many times in the context of § 1983 actions.
Nevertheless, we recognize that, despite the general bar to municipal liability set out in Heller, a situation may arise in which a finding of no liability on the part of the individual municipal actors can coexist with a finding of liability on the part of the municipality. Namely, such a verdict could result when the individual defendants successfully assert a qualified immunity defense. This case presents exactly this situation.
While individual defendants are protected by qualified immunity, municipalities are not. Owen v. City of Independence, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). This distinction has an important ramification on liability: i.e., even when a constitutional violation has been committed, individual defendants may escape liability based on a qualified immunity defense. See Robles v. Prince George’s County, 302 F.3d 262 (4th Cir.2002) (finding constitutional violation but immunity for individual defendants). However, because municipalities are not entitled to assert a qualified immunity defense, a finding of a constitutional violation is conclusive as to their liability. Thus, a jury could find that a constitutional violation has occurred but that the individual defendants are entitled to qualified immunity. Yet the jury could also return a verdict against a municipality based on the same constitutional violation. As other circuits have found, “If the jury based its verdict on the ground that the officers were entitled to qualified immunity, the Heller rule precluding liability is inapplicable.” Myers v. Oklahoma County Bd. of County Com’rs., 151 F.3d 1313, 1317 (10th Cir.1998); see also, e.g., Barber v. City of Salem, 953 F.2d 232, 237-38 (6th Cir.1992). In this situation, there is no “inherent inconsistency” in the jury’s verdict. Myers, 151 F.3d at 1317. Indeed, the Supreme Court implicitly recognized this possibility in Heller when it noted that the fact that the Heller jury was not charged on a qualified immunity defense ruled out the possibility of liability on the part of the municipality once the individual defendants were found not liable. 475 U.S. at 797-98, 106 S.Ct. 1571. We hold, therefore, that when a jury, which has been instructed on a qualified immunity defense as to the individual defendants, returns a general verdict in favor of the individual defendants but *220 against the municipality, the verdict is consistent and liability will lie against the municipality (assuming the verdict is proper in all other respects).[3]
In this case, the verdict form shows that the jury found that the City deprived IGT of procedural and substantive due process but that the individual defendants did not. The City argues that these findings trigger application of the Heller rule and require that judgment as a matter of law be entered in its favor. However, the jury was instructed that it could find the individual defendants not liable based on qualified immunity. Thus, the jury could have found that constitutional violations were committed but that the individual defendants were entitled to immunity. Indeed, this is the only way the jury’s verdict may be read consistently, and we must “harmonize seemingly inconsistent verdicts if there is any reasonable way to do so.” Atlas Food Systems and Services, Inc. v. Crane Nat. Vendors, Inc., 99 F.3d 587, 599 (4th Cir.1996).
For this same reason, we cannot accept the City’s argument that the precise language of the verdict form necessitates a finding of no liability on the part of the City. Although it is true that the questions asked whether the jury found that the individual defendants, e.g., “deprived White’s Taxi of procedural due process” and not simply whether the individual defendants were liable, we find the distinction made meaningless by the submission of qualified immunity to the jury. The jury was specifically instructed that it could find the individual defendants not liable based on qualified immunity. However, the verdict form submitted to the jury allowed the jury to find that the individual defendants committed constitutional violations but were entitled to qualified immunity only by checking the “No” answers to the questions asked regarding the individual defendants (e.g. “Do you find that the following persons deprived White’s Taxi of procedural due process?”). The City, in fact, conceded at oral argument that there was no way for the jury to find that qualified immunity applied except by answering “No” to the questions asking whether the individual defendants had committed constitutional violations. Moreover, because the jury made' specific findings that the City had committed constitutional violations, the only way to read the jury’s verdict consistently is to read the questions asked of the individual defendants as encompassing qualified immunity. As we are required “to determine whether a jury verdict can be sustained, on any reasonable theory,” id., we must conclude that the language of the verdict form permitted the jury to find that the individual defendants committed constitutional violations but were entitled to qualified immunity.
Finally, the City contends that even if the jury found that constitutional violations were committed but that the individual defendants were not liable by virtue of qualified immunity it cannot be held liable because the doctrine of respondeat superi- or does not apply to claims under § 1983. *221 The City misunderstands IGT’s theory of liability. In its complaint, IGT alleged direct liability against the City under § 1983, asserting that officials with final policymaking authority acted to deprive IGT of its constitutional rights. See J.A. 21-22, 24. As such, IGT alleged that the City itself — acting through its policymak-ing officials — was liable. This is a viable theory of liability, see Monell v. Dept. of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (“[W]hen execution of a government’s policy ... whether made by its - lawmakers or by those whose edicts or acts may fairly be said to represent official policy ... inflicts the injury ,.. the government as an entity is responsible under § 1983”), and it is adequately supported by evidence in the record. DiPino, for example, testified that she possesses authority to promulgate rules and regulations governing taxicabs in Ocean City, and she further stated that the Police Commission is an arm of the City composed of several members of the city council plus the mayor. The jury was free to use this testimony to find the City liable, having been instructed that it must determine whether the individual defendants acted in “their individual capacity or in their capacity as officials of Ocean City.” J.A. 605. Thus, the absence of respondeat superior on IGT’s federal claims does not render the jury’s verdict unsound.[4]
Accordingly, the City is not entitled to judgment as a matter of law based on Heller or on any alleged inconsistency in the verdict.
B.
The City next maintains that it should be awarded judgment as a matter of law because IGT failed to present evidence from which the jury could reasonably infer any injury proximately caused by the defendants’ conduct or from which the jury could reasonably calculate any award of compensatory damages. We find the City’s argument unpersuasive.
In contending that the evidence presented at trial does not support the jury’s award of compensatory damages, the City faces a “hefty burden.” Price v. City of Charlotte, 93 F.3d 1241, 1249 (4th Cir. 1996). This is so because in determining whether the evidence supports a jury award, we review the evidence, and all reasonable inferences to be drawn therefrom, in favor of the non-moving party. Id. at 1249-50. Recognizing that we may not substitute our judgment for that of the jury or make credibility determinations, we will affirm if there is evidence in the record on which a reasonable jury may return a verdict in favor of the non-moving party. Id.; see also Duke v. Uniroyal, Inc., 928 F.2d 1413, 1417 (4th Cir.1991) (“If ... a reasonable jury could return a verdict in favor of [the] plaintiffs, the court must defer to the judgment of the jury even if the court’s judgment on the evidence differs.”).
The record in this case contains ample evidence from which the jury could have found actual injuries to IGT caused by the City and the individual defendants. For example, Brian Hamilton testified that *222 IGT was worth approximately $4 million prior to the City’s revocation of its taxicab licenses and that it went out of business afterward. Further, the jury heard that IGT had incurred $2 million in debt, $5,565 in reinspection costs, and $425,000 it used to purchase other taxicabs. In addition, Hamilton’s testimony indicated that IGT lost $4,500 per month in voucher revenues and $250,000 in annual general advertising revenues. Finally, Hamilton stated that all of these losses occurred after the City’s revocation of IGT’s taxicab licenses just prior to the extremely busy Memorial Day weekend.
We believe Hamilton’s testimony and the other evidence presented by IGT (e.g., asset purchase agreements and tax returns) constitutes substantial evidence which supports the jury’s award of $250,000 in compensatory damages. See Barnes v. Norfolk Southern Ry. Co., 333 F.2d 192, 195 (4th Cir.1964) (“Only where there is a complete absence of probative facts to support the conclusion reached does a reversible error appear.”). Whether IGT’s evidence in support of damages lacks credibility — as the City asserts — is a determination that was within the province of the jury. Therefore, the verdict does not fail due to lack of damages.[5]
C.
In sum, although the district court did not specify its rationale for granting judgment as a matter of law to the City, we have examined the two possible bases upon which it could have relied. We find that neither supports the City’s argument that the jury’s verdict is legally unsound and that it is entitled to judgment as a matter of law. Accordingly, the district court erred when it granted the City’s motion.[6]
III
Based on the foregoing, we affirm the denial of IGT’s motion for judgment as a matter of law against the individual defendants but reverse the entry of judgment as a matter of law in favor of the City.

AFFIRMED IN PART AND REVERSED IN PART.

. IGT also operates under the trade name of "White's Taxi.”

. Because the district court granted judgment as a matter of law, we must view the facts— and we recite them here — in a light most favorable to IGT (the non-moving party). Anderson v. Russell, 247 F.3d 125, 129 (4th Cir.2001).

. We do not intend our holding here to approve the submission of qualified immunity to juries. Entitlement to qualified immunity is a legal question to be decided to the court, although factual issues underlying the qualified immunity analysis may be submitted to a jury. Willingham v. Crooke, 412 F.3d 553, 558-59 (4th Cir.2005). This being the case, “the district court should submit factual questions to the jury and reserve for itself the legal question of whether the defendant is entitled to qualified immunity on the facts found by the jury.” Id. at 560. Nonetheless, we find it necessary to hold as we do here because the parties do not maintain that the district court erred in submitting qualified immunity to the jury.

. Of course, based on the wording of the verdict form, the jury also could have found that the City violated IGT’s due process rights under Maryland state law. Even so, the verdict would withstand scrutiny based on our analysis of qualified immunity and direct liability. Alternatively, because Maryland law holds municipalities vicariously liable for the torts of their employees, Serio v. Baltimore County, 384 Md. 373, 863 A.2d 952, 966 (2004), the verdict could also be upheld on the theory that the jury found that a city employee not named as a defendant (such as Captain Parker) violated IGT’s rights under Maryland law.

. Because IGT would be entitled to nominal damages under § 1983 and under Maryland law, the City could not be awarded judgment as a matter of law even had IGT failed to prove actual damages. Randall v. Prince George’s County, 302 F.3d 188, 208 (4th Cir.2002) (noting the availability of nominal damages under Maryland Declaration of Rights); Gray v. Spillman, 925 F.2d 90, 93 (4th Cir.1991) ("Having proven the constitutional violation ... § 1983 requires nothing more to establish the defendants' liability.”).

. IGT contends that the district court erred not only in granting the City's motion for judgment as a matter of law but also in denying IGT's own motion for judgment as a matter of law against the individual defendants. We have reviewed the record and find the denial of IGT’s motion to be proper.