TRAXLER, Circuit Judge,
concurring in part and concurring in the judgment.
I concur in Parts 1,11(B), 11(C), and III, and in the result reached in Part 11(A). Because I look at the issues somewhat differently, I write separately to explain my views.
I.
To fully appreciate the jury’s decisions in this case, we must examine the verdict form and the jury charges.* This jury was asked to report its verdict through *223 answers to specific questions pursuant to Federal Rule of Civil Procedure 49(a). This Rule permits the district court to submit various questions to the jury in lieu of a general verdict and gives the court wide discretion in fashioning appropriate inquiries. The following questions, at issue in this appeal, were submitted:
INDIVIDUAL DEFENDANTS
Please answer “Yes” or “No” with respect to each person.
1. Do you find that the following persons deprived White’s Taxi of procedural due process?
Chief Bernadette DiPino Yes No X
James N. Mathias, Jr. Yes No X
James Hall Yes No X
Joseph T. Hall Yes No X
2. Do you find that the following persons deprived White’s Taxi of substantive due process?
Chief Bernadette DiPino Yes No X
James N. Mathias, Jr. Yes No X
James Hall Yes No X
Joseph T. Hall Yes _ No X
MAYOR AND CITY COUNCIL OF OCEAN CITY
5. Do you find that Ocean City deprived White’s Taxi of procedural due process?
Yes X
No
6. Do you find that Ocean City deprived White’s Taxi of substantive due process?
Yes X
No
J.A. 826.
The jury’s finding of no liability on the part of city officials and its finding of liability on the part of the City itself seem, at first blush, to be inconsistent. In such a situation courts must examine the record to see if there is a legitimate way to reconcile the decisions made by the jury. The Supreme Court has told us: “Where there is a view of the case that makes the jury’s answers to special interrogatories consistent, they must be resolved that way.” Atl. & Gulf Stevedores, Inc., v. Ellerman Lines, Ltd., 369 U.S. 355, 364, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962). Thus, “[w]hen the use of a special verdict form leads to apparently conflicting jury findings, the court has a duty under the seventh amendment to harmonize the answers, if it is possible to do so under a fair reading of them.” Gosnell v. Sea-Land Serv., Inc., 782 F.2d 464, 466 (4th Cir.1986). In our efforts to reconcile the verdicts, we “must view the evidence in the light most favorable to upholding the jury’s decision by a finding of consistency.” Ellis v. Weasler Eng’g Inc., 258 F.3d 326, 343 (5th Cir.2001). In examining the jury’s answers, we must be mindful that a jury can take its own view of the evidence presented to it, regardless of the theories argued by the parties, so long as the jury’s view is supported by the evidence and is consistent with the law as charged.
II.
A.
The first possible reading of the verdict is that the jury found that there were no constitutional violations by any of the individual defendants. If that is the case, the question then would be how the jury could find that none of the named individual defendants committed any constitutional violations themselves, but still find the City itself liable for depriving White’s Taxi of procedural and substantive due process.
*224 One possible explanation concerns an individual who was not sued and on whose actions the jury was not called upon to pass judgment. Captain Parker was a police officer with the Ocean City Police Department and head of the patrol division which had control over the traffic safety unit. Captain Parker was neither named as a defendant nor called to testify. However, Bernadette DiPino, the Chief of Police of Ocean City, testified that she was out of the office and Parker was in charge when the shut-down letter was sent to White’s Taxi. According to Chief DiPino, it was Captain Parker who composed and sent the shut-down letter. Although Chief DiPino said she was generally aware that action was going to be taken, she did not specifically remember being told about the letter before it went out and she did not sign it. Officer Ronnie Townsend testified that he remembered Chief DiPino being out that day and that Captain Parker was acting as Chief.
Under these circumstances, the jury could logically find that Captain Parker was the person who took the action that led to the closing of White’s Taxi and that he was responsible for the denial of procedural due process. Such a finding would explain why the jury decided that none of the individual defendants named in the complaint (DiPino, Mathias, Hall and Hall) were liable for this claim. Since Captain Parker was not sued, his name was not on the verdict form, and the jury had no place to report its belief that he was the one responsible. This would explain how the jury could find a police officer of Ocean City responsible for a violation of procedural due process and still give, a verdict in favor of DiPino, Mathias, James Hall, and Joseph Hall.
The question that follows is how this view of the evidence and the verdict could translate into liability for the City. To answer that question, we must examine what theories of liability against the City were charged to the jury.
White’s Taxi brought federal claims and state law claims against Ocean City. The federal law claims were based on the due process clause, the equal protection clause, and the interstate commerce clause of the United States Constitution. The state law claims were based on the Maryland Constitution, and more specifically on its Declaration of Rights. The rights and protections that exist under procedural and substantive components of the due process clause of the United States Constitution also exist under the Maryland Constitution.
Under federal law, municipalities cannot be held liable under principles of respondeat superior for the actions of their employees. See Monell v. Dep’t of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, a municipality may be held liable under § 1983 only if it causes a deprivation of a constitutional right through an official policy or custom. See Board of the County Comm’rs v. Brown, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).
Maryland law, however, does provide for municipal liability under the doctrine of respondeat superior if an employee has committed a violation of Maryland’s constitutional rights in the performance of his job, see Branch v. McGeeney, 123 Md.App. 330, 718 A.2d 631, 639 (1998), and the district court so charged the jury. Thus, if the jury concluded that Captain Parker was the real culprit in the denial of procedural due process, it would be permissible under Maryland law for the jury to impose liability on the City even while exonerating all of the named defendants. Cf. Southern Mgmt. Corp. v. Taha, 137 Md.App. 697, 769 A.2d 962, 976-78 (2001) (explaining that the jury’s exoneration of the employ *225 ees named as defendants would not invalidate verdict against employer if there was evidence that an employee who was not named as a defendant committed the tort alleged by the plaintiff), vacated on jurisdictional grounds, 367 Md. 564, 790 A.2d 11 (2002). This view, which is supported by the evidence and the law as charged to the jury, renders the verdicts consistent as to the procedural due process claim and requires that the verdict against the City be sustained.
The jury’s decision as to a substantive due process violation against the City is also sustainable based on the judge’s charge. Liability for the City would have been present under federal law on a finding by the jury that the sham hearing before the Police Commission was, as the court charged, “the direct result of Ocean City’s ordinance, regulation, decision, policy or custom.” J.A. 607.
B.
The second possible reading of the verdicts is similar to that advanced by Judge Shedd. That is, the jury believed the individual defendants violated the constitutional rights of White’s Taxi, but found that the individual defendants were protected by qualified immunity. Under the district court’s charge such findings would make the City liable under Maryland law pursuant to principles of respondeat superior since there was no dispute that all of the city officials was acting within the scope of their employment. See Town of Port Deposit v. Petetit, 113 Md.App. 401, 688 A.2d 54, 65 (1997).
III.
The City resists this result, urging that the district court was correct to grant it a judgment as a matter of law. Its view is basically that the jury found no individual violated any constitutional rights and if no one committed a violation, then the City cannot be liable. Thus, the City concludes the district court was in effect compelled to direct entry of judgment for the City regardless of the verdict. There are several things wrong with this argument. First, we have two sets of verdicts — one against the City and one in favor of the individual defendants. The premise of the City’s argument is that the verdict in favor of the individuals was the one correctly found by the jury, and therefore the verdict against the City was the jury’s mistake. But the argument can just as easily be made by White’s Taxi that the verdict against the City was the one correctly found by the jury, and therefore the verdict in favor of the individual defendants was the jury’s mistake. In truth, we have no way of knowing which verdict controls so we treat the two verdicts as potential inconsistencies and approach the problem from that perspective. And second, for the reasons discussed above, I do not believe the jury’s verdicts are inconsistent.
The City also contends that the City of Los Angeles v. Heller, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986), and Grayson v. Peed, 195 F.3d 692 (4th Cir.1999), obligated the district court to grant the motion for judgment as a matter of law. I find those cases inapposite.
In Heller, the Supreme Court considered a situation where a lawsuit against an individual officer and a municipality was bifurcated for trial, with the claims against the officer being tried first. When the jury found the officer had committed no constitutional violation, the Supreme Court held that as a matter of law there could be no liability on the municipality which was “sued only because [it was] thought legally responsible for [the officer’s] actions.” Heller, 475 U.S. at 799, 106 S.Ct. 1571. The facts of Grayson are similar — because there was no constitutional violation by the *226 individual defendant, the municipality could not be held liable. See Grayson, 195 F.3d at 697.
Heller does not stand for the broad proposition that where municipal employees and the municipality are sued together a finding of individual liability is necessary to a finding of municipal liability. As stated by the Eighth Circuit,
The appropriate question under Heller is whether a verdict or decision exonerating the individual governmental actors can be harmonized with a concomitant verdict or decision imposing liability on the municipal entity. The outcome of the inquiry depends on the nature of the constitutional violation alleged, the theory of municipal liability asserted by the plaintiff, and the defenses set forth by the individual actors.
Speer v. City of Wynne, 276 F.3d 980, 986 (8th Cir.2002).
Heller and Grayson do not control in this situation because in those cases the liability of the municipalities under federal law was patently dependent on their officers having committed a constitutional violation. Upon a finding that the officer had committed no wrongdoing, the municipality was exonerated. Here, as to the due process claims, municipal liability could have been found in one of two ways. Either the jury could have decided that an employee did commit a constitutional violation for which the City could be held liable under Maryland law, or the jury could have found a basis for municipal liability under federal law that did not require a finding of individual liability by any particular employee.
While this jury’s rationale was admittedly murky, a number of legitimate explanations for the jury’s decisions can be found. In such a situation the law is clear as to what courts must do — we should reach a reconciliation if it can reasonably be done. I believe that it is possible to reconcile the verdicts, as outlined above. Accordingly, I would also reverse the district court’s grant of judgment as a matter of law.

 This case is made more difficult by the unusual way the jury charge was structured and by the way the verdict form was configured. Since no appeal is taken as to the charge and no objection was made to the relevant portions of the verdict form, I express no opinion on the validity of either.