**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 12-6373
_____

JEAN B. GERMAIN,

                Plaintiff – Appellant,

          v.

BOBBY SHEARIN; JAMES HOLWAGER; LT. HARBAUGH; SERGEANT
SMITH; BRUCE A. LILLER; SGT. MCALPINE; LAURA MOULDEN,

                Defendants – Appellees.

_____

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  J. Frederick Motz, Senior District
Judge.  (1:11-cv-01613-JFM)

_____

Argued:  March 19, 2013              Decided:  July 3, 2013

_____

Before GREGORY, WYNN, and DIAZ, Circuit Judges.

_____

Affirmed in part, vacated in part, and remanded by unpublished
per curiam opinion.

_____

**ARGUED:** Scott Martin, GIBSON, DUNN & CRUTCHER, LLP, Washington,
D.C., for Appellant.  Siobhan Kelly Madison, OFFICE OF THE
ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for
Appellees.  **ON BRIEF:** Douglas F. Gansler, Attorney General of
Maryland, Baltimore, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jean Germain filed this action under 42 U.S.C. § 1983 against various officials and employees at the North Branch Correctional Institution ("NBCI") in Maryland,[1] where he is an inmate, alleging that the defendants, with deliberate indifference to his medical needs, attempted to place him in a double cell, and that the conditions of confinement in a contingency cell violated the Eighth Amendment. The district court granted defendants summary judgment, concluding that the defendants' attempt to place Germain in a double cell was part of a treatment plan for his anxiety issues and that there was no evidence that he had a serious or significant physical or emotional injury resulting from the conditions of confinement.[2] For the following reasons, we affirm in part, vacate in part, and remand.

I.

A.

---

[1] The defendants are Bobby Shearin, Warden; Bruce Liller, Acting Chief of Psychology; James Holwager, Chief of Psychology Services; Laura Booth-Moulden, Mental Health Professional Counselor; and three correctional officers: Lieutenant Harbaugh, Sergeant Smith, and Sergeant McAlpine.

[2] The district court also granted defendants summary judgment on a retaliation claim, which Germain does not challenge on appeal.

2

This appeal has its origins in a prior lawsuit filed by Germain, where he sought injunctive relief granting him permanent single-cell status. Germain v. Shearin, No. 09-3097, 2010 WL 4792676 (D. Md. Nov. 18, 2010). In that suit, Germain alleged that he was sexually assaulted by a cellmate at the Jessup Correctional Institution ("JCI") in 1998. In response, Germain stabbed the assailant over a hundred times, which resulted in German receiving an additional thirty years on his sentence. Shortly thereafter, Maryland officials transferred Germain to the Maryland Correctional Adjustment Center, where he stayed until he returned to JCI in 2003. Dr. Musk, chief psychologist at JCI, recommended that JCI place Germain in a single cell. In 2008, Germain was transferred to NBCI, where, with some exceptions, he was housed in a single cell until late 2009.

In June 2009, prison officials informed Germain that they intended to place him in a double cell. As a result, Germain suffered a panic attack, wrote letters to psychological staff, and was eventually placed on suicide watch. In October 2009, prison officials placed Germain in disciplinary segregation when he refused to accept a double cell. Psychologists later concluded that Germain did not meet the criteria to be permanently housed in a single cell, but he was returned to a single cell for ninety days pending further evaluation. Germain

3

then filed the prior lawsuit, seeking an injunction preventing prison officials from placing him in a double cell.

The district court dismissed the suit. While recognizing that Germain had been diagnosed with anxiety disorder and had acted violently in the past, the court concluded that prison psychologists were adequately treating Germain's anxiety disorder. Id. at *4. We affirmed. See Germain v. Shearin, 430 F. App'x 220 (4th Cir. 2011).

## B.

One week after our decision, prison officials informed Germain that they intended to place him with another inmate. Germain contends that officials at NBCI never evaluated him to determine whether he required housing in a single cell. Given his anxiety, Germain expressed his unwillingness to be placed in a double cell and informed at least one defendant, Sgt. Smith, that he was suicidal. Thereafter, officials placed Germain in a "contingency" cell,[3] where he attempted suicide later that day. J.A. 22-23. After the suicide attempt, Germain was placed in a holding cell, where he was continuously observed.

The next day, Germain met with Dr. Bruce Liller, acting chief of psychology at NBCI, who stressed to Germain the

---

[3] According to Sgt. Smith, "[a] contingency cell[] is like any other cell, except that it has no bunks. The inmate is provided with a mattress and bedding material." J.A. 20.

4

importance of "demonstrating the ability to be double-celled." J.A. 108. Germain, however, expressed reluctance. As a result, Dr. Liller recommended that Germain be placed in a single cell for ninety days to help his transition to a double cell. Germain would have the opportunity to select a cellmate during this period and receive further evaluation at the conclusion of the ninety days.

After Germain advised Dr. Liller that he no longer had suicidal thoughts, Germain was moved from a holding cell to a contingency cell. Germain contends that the toilet in the contingency cell was inoperable and filled with urine and feces; he was deprived of toilet paper to clean himself after using the toilet; and flies, ants, and other insects infested the cell. Germain also contends that during his time in the contingency cell he was deprived of food, lost twenty-three pounds, and suffered headaches. Germain remained in the contingency cell until June 12, 2011, when officials transferred him to a single cell pursuant to Dr. Liller's plan.

C.

On June 8, 2011, while still detained in the contingency cell, Germain filed this § 1983 action against various officials and employees at NBCI. Defendants moved to dismiss or, in the alternative, for summary judgment. The district court granted defendants summary judgment, concluding that one of the

5

treatment goals for Germain was to acclimate him to a double cell. The court reasoned that defendants did not act with deliberate indifference; rather, defendants instituted a course of treatment that Germain disputed was the optimal treatment for his anxiety. The court also concluded that Germain's conditions-of-confinement claim failed because there was no objective evidence that he had a serious or significant physical or emotional injury. Germain moved to alter or amend the judgment, which the court denied. This appeal followed.

## II.

The issues before us are whether the district court erred in granting summary judgment on Germain's claims that (1) defendants were deliberately indifferent to Germain's medical needs, in violation of the Eighth Amendment, in assigning him to a double cell and later keeping him in a contingency cell for twelve days, and (2) the conditions in Germain's contingency cell violated the Eighth Amendment.

We review Germain's challenges to the district court's entry of summary judgment de novo, viewing all facts and drawing all inferences in his favor. See Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

6

of law." Fed. R. Civ. P. 56(a). A court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). It is insufficient for the nonmovant to present "[t]he mere existence of a scintilla of evidence," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986), or "simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, the nonmovant must present "evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.

To survive summary judgment, therefore, Germain must put forth evidence to create a material issue of fact as to both elements of the familiar two-part test for an Eighth Amendment claim, in which a plaintiff must prove "(1) that the deprivation of a basic human need was objectively sufficiently serious, and (2) that subjectively the officials acted with a sufficiently culpable state of mind." De'lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (alterations and quotations omitted).

With respect to the objective prong, "[o]nly extreme deprivations" are sufficient to constitute a violation of the Eighth Amendment. Id. A prisoner may establish an extreme

7

deprivation by showing "a serious or significant physical or emotional injury resulting from the challenged conditions" or "a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions."  Id.

To establish the subjective prong, a prisoner must prove "that a prison official actually [knew] of and disregard[ed] an objectively serious condition, medical need, or risk of harm." Id.  This deliberate indifference standard is not satisfied by "a showing of mere negligence," Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999), a "mere error of judgment or inadvertent failure to provide medical care," Boyce v. Alizaduh, 595 F.2d 948, 953 (4th Cir. 1979) (internal quotations omitted), abrogated on other grounds by Neitzke v. Williams, 490 U.S. 319 (1989), or mere disagreement concerning "[q]uestions of medical judgment," see Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975).  With this legal framework in mind, we now turn to the substance of Germain's claims.

A.

We first consider Germain's argument that the district court erred in granting defendants summary judgment on his claim that defendants were deliberately indifferent to his medical needs by (1) assigning him to a double cell on May 31, 2011; and (2) delaying his reassignment to a single cell for almost two

8

weeks following his suicide attempt and subsequent psychiatric examination.

1.

According to Germain, the district court erred in concluding that his assignment to a double cell was pursuant to a treatment plan because it relied solely on Dr. Liller's report, which he prepared only after Germain's transfer and suicide attempt. Thus, Germain argues that there is nothing in the record to establish that defendants made a medical judgment at the time of the transfer. Rather, Germain maintains that a factfinder might infer deliberate indifference from defendants' knowledge of his history of anxiety and his statement that he was suicidal.

For the most part, however, Germain does not present sufficient evidence that defendants acted with deliberate indifference. Defendants' knowledge of Germain's history of anxiety is insufficient to support a finding of deliberate indifference with respect to the May 31, 2011, transfer because there is no evidence that defendants believed Germain required a single cell. To the contrary, Dr. Holwager had previously concluded that Germain's anxiety was not severe enough to

9

require assignment to a single cell.[4]  And Dr. Liller's June 1, 2011, note, together with the other record evidence, demonstrates that prison officials had a longstanding treatment goal of assigning Germain to a double cell.  At most, Germain establishes that defendants acted negligently in transferring him without an evaluation.  Mere negligence, however, is insufficient to give rise to a § 1983 claim.  Grayson, 195 F.3d at 695.

We reach a different conclusion as to Germain's claim that Sgt. Smith acted with deliberate indifference after Germain informed Sgt. Smith that he was suicidal.  Defendants presented no evidence to the district court at the summary judgment stage to directly contradict this claim, and they failed to respond in their brief to this particular argument.  Moreover, none of the district court's grounds for granting Sgt. Smith summary judgment on this narrow issue withstand scrutiny.

The district court concluded that Germain's sworn statement was contradicted by the record and that there was no evidence that defendants took Germain's suicide threat seriously.  However, whether Germain's sworn statement is in fact false is a credibility determination, which is properly resolved by a

---

[4] We may properly take judicial notice of Dr. Holwager's affidavit in Germain's prior, related lawsuit.  See United States v. White, 620 F.3d 401, 415 n.14 (4th Cir. 2010).

factfinder, not a "judge ruling on a motion for summary judgment." Anderson, 477 U.S. at 255. Moreover, Germain's sworn statement indicates that he informed Sgt. Smith of the serious risk of the precise type of harm that followed. Certainly Germain's statement to Sgt. Smith that he was suicidal is sufficient for a factfinder to find that Sgt. Smith knew that Germain posed a suicide risk. See Farmer v. Brennan, 511 U.S. 825, 837 (1994).

The district court also erred in concluding that a suicide cell was not materially different than the contingency cell in which defendants placed Germain. The record demonstrates that a suicide cell would have been stripped of any items Germain could use to cause himself harm. The contingency cell, on the other hand, had bedding--the very instrument Germain used to attempt suicide.

By submitting admissible evidence that he warned Sgt. Smith of a serious risk of injury and that Sgt. Smith acted with deliberate indifference to that risk, Germain has raised a triable issue of fact. See Odom v. S.C. Dep't of Corr., 349 F.3d 765, 771 (4th Cir. 2003). Accordingly, this aspect of Germain's claim survives summary judgment.

2.

Germain further argues that a factfinder could conclude that defendants acted with deliberate indifference in continuing

11

his double-cell status and contingency cell confinement for nearly two weeks following his suicide attempt. Germain complains that while Dr. Liller's June 1, 2011, note indicated an intent to recommend a temporary single-cell assignment, prison officials did not transfer him back to a single cell until twelve days later.

We conclude, however, that Germain fails to establish that defendants acted with deliberate indifference. During this time, Germain was never placed with another cellmate. Indeed, the record indicates that defendants acted diligently following Germain's apparent suicide attempt: they placed him under observation; evaluated his mental health the following day, confirming that he was no longer a suicide risk; and put in place a treatment plan, which provided an additional ninety-day adjustment period before moving him to a double cell. In short, Germain has failed to present a triable issue of fact that defendants acted with deliberate indifference when keeping him in a contingency cell while putting in place a treatment plan for his anxiety.

B.

We next consider Germain's argument that the district court erred in granting defendants summary judgment on his claim that the conditions in his contingency cell violated the Eighth Amendment. Germain contends that he should survive summary

12

judgment on the objective prong of this claim because he has provided (1) a sworn affidavit that he was deprived of food and lost twenty-three pounds, and (2) a statement that his cell was infested with bugs and had an inoperable toilet filled with human waste. According to Germain, this is sufficient to establish an extreme deprivation of human needs and it is up to the factfinder to determine whether these conditions actually existed.

Once again, however, Germain has failed to provide sufficient evidence to allow a factfinder to conclude that defendants acted with deliberate indifference. He has not pointed to anything in the record that demonstrates that he notified defendants of the infestation or inoperable toilet in his cell, or the purportedly resulting headaches. Cf. Rish v. Johnson, 131 F.3d 1092, 1099 (4th Cir. 1997) (finding no direct evidence that prison officials knew proximity to waste posed a substantial risk of harm). Likewise, there is no evidence that he notified any of the named defendants that he was being denied his regular meals, or that any of the named defendants was responsible for denying him his regular meal.[5] Because Germain

---

[5] We also note that Germain's medical records, the prison's daily event logs, and the prison's observation logs fail to show weight loss, complaints of insufficient nutrition, or denial of meals. The record does contain a sick call slip dated June 6, 2011, and received June 9, 2011, where Germain complained about (Continued)

13

has failed to present evidence establishing that defendants knew of the purported deficient conditions of confinement or failed to respond to his complaints, this claim must fail.

III.

For these reasons, we affirm the judgment of the district court, except that we vacate its grant of summary judgment to Sgt. Smith on Germain's claim that Sgt. Smith acted with deliberate indifference to Germain's suicide threat. We remand for further proceedings on that ground only.

<u>AFFIRMED IN PART;</u>
<u>VACATED IN PART;</u>
<u>AND REMANDED</u>

---

the lack of a high-calorie diet. J.A. 82. However, there is no indication that any named defendant was aware of this complaint. Moreover, the slip includes a notation that Germain was placed on the high-calorie diet in December 2010, and Germain concedes that he received his high-calorie bag on June 9, 2011. Thus, the record demonstrates that Germain's only documented complaint was promptly addressed.